[No. 18267. *En Banc.* November 21, 1924.]

NORTHERN CEDAR COMPANY, *Respondent*, v. EDWARD L.
FRENCH, *as Director of Agriculture, et al.,
Appellants.*

C. W. CHAMBERLAIN & COMPANY *et al., Respondents*, v.
EDWARD L. FRENCH, *as Director of Agriculture,
et al., Appellants*, JAMES G. AUDA *et al.,
Interveners and Respondents.*

YAKIMA COUNTY HORTICULTURAL UNION, *Respondent,*
v. EDWARD L. FRENCH, *as Director of Agriculture,
et al., Appellants.*[1]

FACTORS (1)—REGULATION — COMMISSION MERCHANTS — CONSTI-
TUTIONAL LAW—POLICE POWER. A horticultural union which alleges
that it does some of its business as an ordinary commission mer-
chant cannot claim that, as to such part, it is a "non-profit cooper-
ative marketing association" within the meaning of the commission
merchants' law, Rem. 1923 Sup., § 8292.

CONSTITUTIONAL LAW (102, 116, 134)—CLASS LEGISLATION—DIS-
CRIMINATION — REGULATION OF TRADE OR BUSINESS — COMMISSION
MERCHANTS. The regulation of the business of commission mer-
chants (Rem. 1923 Sup. § 8292 *et seq.*) is a proper exercise of the
police power for the protection and welfare of the people, and
violates no constitutional provision with respect to interference
with liberty or equality of rights of property.

SAME (102, 116, 134)—CLASS LEGISLATION—DISCRIMINATION BE-
TWEEN CLASSES OF FOOD PRODUCTS — REGULATION OF COMMISSION
MERCHANTS. The commission merchants' act, Rem. 1923 Sup., § 8292,
excepting from its operation "non-profit cooperative marketing
associations" is not unconstitutional as class legislation, since the
classification involved is reasonable and has a fair basis, and is
therefore not discriminatory.

FACTORS (1)—REGULATION—COMMISSION MERCHANTS—STATUTES
—SCOPE—SUBJECTS INCLUDED IN REGULATION. The commission mer-
chants' act, Rem. 1923 Sup., § 8292 *et seq.*, is not unconstitutional
in that it includes forestry products and agricultural products
which have no relation to each other.

[1]Reported in 230 Pac. 837.

Nov. 1924]                Statement of Case.

CONSTITUTIONAL LAW (53)—IMPRISONMENT FOR DEBT—FACTORS—VIOLATION OF COMMISSION MERCHANTS' LAW. Rem. 1923 Sup., § 8302, making it a misdemeanor to violate any of the provisions of the commission merchants' act, does not make the act unconstitutional as authorizing imprisonment for debt, since the constitutional provision has reference only to imprisonment for debt in civil actions at the instance of the creditors.

SAME (114, 126, 133) — EQUAL PROTECTION OF THE LAWS — DUE PROCESS OF LAW—LICENSES—REVOCATION—NOTICE OF HEARING. Rem. 1923 Sup., § 8299, violates the constitutional provisions relating to due process of law, in that it provides no notice to commission merchants before forfeiture of their license to do business; and the right to notice will not be implied when none is provided for (PEMBERTON, J., dissenting).

STATUTES (9)—PARTIAL INVALIDITY—EFFECT — COMMISSION MERCHANTS—REVOCATION OF LICENSE. The unconstitutionality of Rem. 1923 Sup., § 8299, authorizing the director of licenses to forfeit a commission merchant's license to do business without any notice or hearing, does not affect the constitutionality of the balance of the commission merchants' act.

FACTORS (1)—COMMERCE (1)—POWERS OF STATE TO REGULATE—STATUTES—VALIDITY. The fact that part of the business of a commission merchant is interstate commerce does not affect the validity of the commission merchants' act (Rem. 1923 Sup., § 8292) in so far as defendant's business is interstate, or justify sustaining a demurrer to an action brought to enjoin enforcement of the law.

COMMERCE (1)—POWERS OF STATE TO REGULATE. The commission merchants' act (Rem. 1923 Sup., § 8292), is not invalid in that it incidentally affects, without levying any tax or burden upon, interstate commerce, or trenches on the rights of Congress.

FACTORS (1)— REGULATION — CASH PAYMENTS — LIMITATIONS—STATUTES—VALIDITY. Rem. 1923 Sup., § 8298, requiring commission merchants to remit to the producer within ten days following any sale, is not invalid in that it requires prior remittances on credit sales, since it may simply have the effect of requiring cash sales; nor because it limits commissions to 10% unless agreed to in writing.

STATUTES (18)—SUBJECT AND TITLE—FACTORS—REGULATION. The title of an act "relating to commission merchants engaged in selling any agricultural product" is germane and broad enough to include "forestry products."

Appeal from judgments of the superior court for Thurston county, Wilson, J., entered September 7,

1923, in favor of the plaintiffs, upon overruling demurrers to the complaints, in consolidated actions for an injunction. Reversed.

*The Attorney General* and *E. W. Anderson, Assistant,* for appellants.

*E. S. Gill* and *Guie & Halverstadt,* for respondents.

BRIDGES, J.—The plaintiffs, including the interveners, in these various consolidated actions, sought to enjoin the state director of agriculture from enforcing against them the commission merchants' regulation act, Laws of 1923, p. 366 [Rem. 1923 Sup., § 8292]. They attack it as being wholly invalid and unconstitutional. Chamberlain & Company and the interveners allege that they are ordinary commission merchants, and that in years gone by they have built up a large business, and that, if the act in question is enforced against them, they will be greatly injured. The allegations of the Northern Cedar Company are substantially the same as those mentioned, except it alleges that it is engaged in the business of handling timber products, such as lumber and shingles, and that a very considerable portion of its business is interstate, and that the legislative act is void because it seeks to regulate interstate traffic. The Yakima County Horticultural Union alleges that it was organized for the purpose of protecting the interests of producers of fruit and fruit products, and that in its business it purchases all kinds of such property and warehouses it and disposes of it, and that a large portion of its business is done on the cooperative plan for its members, and that it also acts as a common commission merchant as to a part of its business. The demurrers of the defendants having been overruled, and they having refused to plead further, judgment was entered in each case, en-

joining the defendants from enforcing the act in question. The trial court was of the opinion that the act was unconstitutional and void because it excepts from its provisions non-profit cooperative marketing associations, and for other reasons.

Section 1 of the act in question is as follows:

"The term 'agricultural product' whenever used in this act shall include any horticultural, viticultural, forestry, dairy, livestock, poultry, bee or farm product; the term 'commission merchant' whenever used in this act shall include every person, firm or corporation who receives any agricultural product to be sold on commission for the account of another, but shall not include non-profit cooperative marketing organizations; the term 'consignor' whenever used in this act shall mean any person, firm or corporation forwarding, delivering, consigning or shipping any agricultural product to any commission merchant for sale on commission." Laws of 1923, p. 366, § 1 [Rem. 1923 Sup., § 8292].

Section 2, p. 366 [Rem. 1923 Sup., § 8293], requires every commission merchant, as a condition precedent to engaging in his business, to make an application for a license, and to file the same, together with a surety company bond in the sum of $3,000, and to file one copy of the application with the director of agriculture and a duplicate with the state treasurer. Thereupon the state treasurer, on the next succeeding business day, transmits the application and bond, together with his duplicate receipt for the fee, to the department of licenses, and upon receipt of the same a license issues to the commission merchant as of course.

Section 3, p. 368 [Rem. 1923 Sup., § 8294], fixes the fee of ten dollars, and the expiration of the license as December 31, next following issue.

Section 4, p. 368 [Rem. 1923 Sup., § 8295], requires every such licensee to keep an accurate and complete

set of books in which shall truly be recorded the amount, character of all agricultural products received on consignment from any resident of the state, with the date of receipt, the name of the consignor, and the condition of the shipment when received, the date when the same or any part of such consignment is sold, together with the price for which sold, and the name of the vendee, which books shall at all times be open and subject to inspection by the director of agriculture and the consignor.

Section 5, p. 368 [Rem. 1923 Sup., § 8296], requires the commission merchant, on receipt of a shipment, immediately to send to the consignor a statement in writing showing what products were received and the date and condition thereof, and

". . . if any such agricultural products are received in a damaged condition and unfit for sale, or if the markets are overstocked, it shall be the duty of such commission merchant to notify the director of agriculture or his duly authorized agent and procure from such director or such agent a certificate in duplicate as to the condition of such agricultural products and the condition of the market; to pay such reasonable fee as may be required for inspection and such certificate; and to transmit a duplicate of said certificate to the consignor." Laws of 1923, p. 368 [Rem. 1923 Sup., § 8296].

Section 6, p. 369 [Rem. 1923 Sup., § 8297], requires every commission merchant, on sale of all or any portion of any agricultural products received for sale on commission, within five days following such sale, to render a true statement to the consignor showing such sale, price received, the date of sale, all charges and expenses paid or incurred, and, if required by the consignor in writing, the names and addresses of the purchasers, and whether the market price was obtained.

Section 7, p. 369 [Rem. 1923 Sup., § 8298], prohibits

a charge in excess of ten per cent of the selling price, unless otherwise agreed to in writing, and

"Every commission merchant shall, within ten (10) days following the date of the sale of any such agricultural products, pay to the consignor all sums due said consignor after deducting therefrom any reasonable amount paid for transportation and drayage and any commission or fee to which said commission merchant is entitled."

Section 8 of the act is as follows:

"Whenever any consignor shall, after request, receive no remittance or report of sale, or if after receipt of any report or remittance be dissatisfied with such report or the amount of such remittance, he may make a verified complaint in writing to the director of agriculture who shall upon receipt of the same cause to be investigated the sale or sales complained of, and if upon such investigation it appears that the said commission merchant has failed or neglected to account for such consignment or any part thereof, or has failed or neglected to make a true and complete report thereof, it shall be the duty of the director of licenses, upon recommendation of the director of agriculture to revoke the license of such commission merchant; and thereafter such commission merchant shall not be entitled to any license until the director of agriculture shall approve the issuance of a license to such person." Laws of 1923, p. 369 [Rem. 1923 Sup., § 8299].

Section 9, p. 370 [Rem. 1923 Sup., § 8300], provides for an action on the bond in the event of failure or neglect to pay the amount received from the sale.

Section 10, p. 370 [Rem. 1923 Sup., § 8301], makes it unlawful for any commission merchant to enter into any combination, conspiracy or pool, for the purpose of excluding from any market, or artificially raising or depressing the market price of any agricultural product of the state of Washington.

Section 11, p. 371 [Rem. 1923 Sup., § 8302], makes a violation of the act a misdemeanor, and section 12,

p. 371 [Rem. 1923 Sup., § 8302-1], requires the director of licenses to revoke any license issued under the act whenever the licensee is convicted of any violation of the act.

The respondents attack the act on the general grounds that it is in violation of the equal protection and due process of law clauses of the state and Federal constitutions, and specifically for the following reasons: (a) because the legislature has no constitutional right to regulate the business of a commission merchant; (b) because the act excepts non-profit cooperative marketing associations organized under ch. 115, Laws of 1921, p. 357 [Rem. Comp. Stat., § 2878], and the products included in the definition of "agricultural products" are not of a natural selection and are not such as can be grouped without including other articles similarly sold; and because there is an unlawful classification as to persons and businesses; (c) because there is no reason justifying the inclusion of lumber in the term "agricultural products;" (d) because it is in violation of the state constitution providing that there shall be no imprisonment for debt; (e) because it provides that, under certain circumstances, the director of agriculture may, upon his own investigation and without any notice, annul the license required to be obtained; (f) because the act violates the interstate commerce clause of the Federal constitution; (g) because the regulations are unreasonable.

We have been greatly assisted by the able arguments and briefs presented by the respective parties. Before proceeding to the more general objections, we will dispose of a preliminary matter.

The Yakima County Horticultural Union alleges that it does a large portion of its business as a cooperative association, and for that reason it comes within the

exception to the act, which exception is that it shall not include "non-profit cooperative marketing associations." The complaint not only fails to allege that it is a "non-profit" cooperative association, but affirmatively alleges that it does some of its business as an ordinary commission merchant. Plainly, the act covers such portion of its business as is not strictly cooperative and, if it be constitutional, it was error to overrule the demurrer. We do not find it necessary at this time to decide whether the act intended to except strictly cooperative associations, whether operating for profit or not. That matter will have to be disposed of when it arises. We will now proceed to the general objections to the act.

(a) That the legislature has no constitutional right to regulate the business of a commission merchant.

While this has been elaborately briefed, we deem it unnecessary to say much concerning it. Several of the courts of the country have upheld legislative acts which sought to regulate such a business, and in the case of *State v. Bowen & Co.*, 86 Wash. 23, 149 Pac. 330, Ann. Cas. 1917B 625, this court seems to have settled the question. That case discussed the Laws of 1907, p. 266. That was an act very similar to the one under discussion here. It was there contended that the business of a commission merchant being a necessary, lawful, useful and common business was not subject to legislative control, but we held that the act was a proper exercise of the police power of the state for the protection of the welfare of the people, and it did not violate any constitutional provision with respect to interference with liberty, equality or the rights of property. It is intimated that the *Bowen* case was in effect overruled by the opinion in *State v. Powles & Co.*, 90 Wash. 112, 155 Pac. 774. It may be (although we do not so decide) that the *Powles* case is inconsist-

ent with the *Bowen* case in so far as the question of classification is concerned, but it leaves the *Bowen* case untouched in so far as it holds that the legislature, in the exercise of its police power, may license and regulate commission merchants. Indeed, on the question of the power of regulation the court seems to have been unanimous in the *Bowen* case, for in the dissenting opinion, written by Judge Chadwick and concurred in by three other members of the court, it is said:

"No one can take exception to the abstract proposition stated in the majority opinion.          .          .          .
Granting that it is within the power, as is held by the majority and as I admit, of the state to provide that all commission merchants must take out a license and must give a bond, and make the report required by the statute and subject their books to the inspection of all who are interested, the real point in this case is not whether that can be done, but whether the legislature can say that it shall be done by some commission merchants and not by others."

Acts similar to that in question here have been upheld. *State ex rel. Beek v. Wagener,* 77 Minn. 483, 80 N. W. 633, 778, 1134, 77 Am. St. 681, 46 L. R. A. 442; *Lasher v. People,* 183 Ill. 226, 55 N. E. 663, 75 Am. St. 103, 47 L. R. A. 802. Unquestionably, the legislature found that certain evils which affected the public existed in the business of commission merchants, otherwise this law would not have been passed, and the legislature sought to correct those evils for the general benefit. Whether such evils exist in a business, which directly affects the public, as that regulation is necessary to correct them is generally a question for the legislature and not for the courts. In this state three separate legislatures have attempted to enact laws for the regulation of commission merchants. Laws of 1895, p. 369; Laws of 1907, p. 266, *supra,* and the act under consideration. If, as has often been held, rail-

roads, banks, the insurance business, hotels, grist mills, grain elevators, warehouses and many other lawful occupations may be regulated, we see no reason to deny the legislature power to also regulate commission merchants.

(b) It has been elaborately and forcefully argued that the act is void because it excepts from its provisions "non-profit cooperative marketing associations" organized under ch. 115, Laws of 1921, *supra,* because, it is argued, the effect is to require some commission merchants to take out a license and be regulated, while it permits others to do the same business in the same way without regulation.

Unquestionably, respondents' position is right if their conclusion is based upon sufficient facts. It seems to be conceded that, by the proviso in § 1 of this act, the legislature intended to relieve from regulation the non-profit cooperative marketing associations affected by the Laws of 1921, p. 357, *supra.* But a legislative act such as this is not violative of constitutional inhibitions so long as the classification involved is reasonable and has some fair basis, and it is universally held that the courts will not look too nicely into legislative acts to determine whether a reasonable distinction exists. The rule is well stated by Judge Tolman, in *State v. Cannon,* 125 Wash. 515, 217 Pac. 18, as follows:

"The settled rule is that a discrimination is valid if not arbitrary in a legislative sense, that is, outside of the wide discretion that the legislature may exercise, and only when it clearly appears that no reasonable distinction exists may we hold the legislative act to be unconstitutional."

See *Town of Sumner v. Ward,* 126 Wash. 75, 217 Pac. 502.

There unquestionably exists a distinction between the ordinary commission merchant included in this act and the nonprofit cooperative merchants regulated by Laws of 1921, p. 357, *supra*. Under the latter act, it is provided that only producers of farm products may cooperate and that an association formed by them shall handle only such products as are produced by its members. It expressly says that "no association, however, shall handle the products of any non-member," and that they shall be termed "nonprofit," inasmuch as they are not organized to make profits for themselves as such or for their members as such, but only for their members as producers. Under this act, instead of each producer marketing individually his own products, several producers join together to market the combined product. It is nothing more nor less than a man doing his own marketing. There is no idea of profit to such cooperative associations—as brokers. The legislature might have determined that the same incentive and opportunities for the evils sought to be corrected did not present themselves to such a cooperative association as to independent commission merchants who do a general marketing business for profit to themselves. Almost this identical point was involved in *German-American Alliance Ins. Co. v. Superintendent of Insurance of State of Kansas*, 233 U. S. 389. The act in question there sought to regulate fire insurance companies and provided that the act should not "affect farmers' mutual insurance companies organized and doing business under the laws of this state." The act was attacked on account of this exception, but the court said:

"A legislative classification may rest on narrow distinctions. Legislation is addressed to evils as they may appear, and even degrees of evil may determine its exercise. . . . There are certainly differences be-

tween stock companies, such as complainant is, and the mutual companies described in the bill, and a recognition of the differences we cannot say is outside of the constitutional power of the legislature.''

In *Ozan Lumber Co. v. Union County National Bank of Liberty,* 207 U. S. 251, the court considered a legislative act which required certain classes of vendors of patent medicines, who took promissory notes in payment, to see that such notes stated on their faces the subject of the sale, but excepted from its operation ''merchants and dealers who sell patented things in the usual course of business.'' The court held that the exception did not invalidate the act and that there were reasonable grounds for the classification.

Counsel for respondents rely on *State v. Robinson Co.,* 84 Wash. 246, 146 Pac. 628. The act under consideration there sought to regulate the sale of ''concentrated commercial feeding stuffs,'' but exempted from its operation cereal or flouring mills and permitted them to sell such articles without regulation. We held that this was an injust discrimination and that the act was void. That case cannot be controlling of this one, because the persons excepted from the act did business in exactly the same way as those within the act, and the same incentives and influences to evil in the one permeated the others. The difference between that case and this seems to us manifest. The following are but a few of the cases supporting the view we have taken: *Selvage v. Talbott,* 175 Ind. 648, 95 N. E. 114, Ann. Cas. 1913C 724, 33 L. R. A. (N. S.) 973; *Cargill Co. v. State of Minnesota,* 180 U. S. 452; *Central Lumber Co. v. State of South Dakota,* 225 U. S. 157; *Mutual Loan v. Martell,* 222 U. S. 225.

But it is earnestly argued that it is unfair and discriminatory to regulate the handling of some food products and not others of like character. It is said

that the fishing industry of this state is very extensive and that it is marketed to a large extent through commission merchants, and that if it is proper or necessary to regulate the sale of other kinds of food products, it is likewise necessary to regulate that industry, and not to do so is to make an unjustifiable distinction.

In the first place, it may be that the legislature determined that the need for regulating the sale of food fish was not as great as that for the regulation of other food stuffs. We cannot say, as a matter of law, that the evils which the legislature found had grown up in connection with the marketing of various products covered by this statute prevail to the same extent in the sale of fish products. But should it be conceded that there is as much reason to regulate the one as the other, still the act is not unconstitutional. It is not necessary that the legislature in one act cover all foods the sale of which needs regulation. It will not do to say that an act which justly regulates certain things is unlawful because it fails to regulate other things, even of a similar nature.

In *Soon Hing v. Crowley*, 113 U. S. 703, 28 Law Ed. 1145, the supreme court of the United States said:

"The specific regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint because like restrictions are not imposed upon other business of a different kind. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws."

In *People of State of New York ex rel. Lieberman v. Van De Carr*, 199 U. S. 552, the court held that it is

primarily for the state to select the business to be regulated, and if those selected are proper subjects for regulation, those engaged therein are not denied the equal protection of the law because other businesses are not subject to similar regulation, provided all engaged in the same business are treated alike.

In the case of *Armour & Co. v. State of North Dakota*, 240 U. S. 510, the court considered an act which required lard to be packed in certain designated containers. It was claimed that the act was void because it failed to regulate other products of the same general kind. The court denied this contention, saying:

"The range of discretion that a State possesses in classifying objects of legislation we may be excused from expressing, in view of very recent decisions. The power may be determined by degrees of evil or exercised in cases where detriment has been experienced . . . The law of North Dakota does not exceed this power."

In *State ex rel. Beek v. Wagener, supra,* this question was elaborately discussed and the court held that the characteristics of agriculture and farm products and the ability to commit abuses in the sale thereof on commission are such as to suggest the practical necessity for legislation on the subject different from what would be expected in the case of other property sold on commission, and to justify the legislature, in its discretion, in putting those who sell them on commission in a class by themselves.

(c) It is contended, particularly by the respondent Northern Cedar Company, that forest products have no such relation to farm products as that the two may be included in one act of the legislature and alike regulated.

Unquestionably, a legislative act would be valid which undertook to regulate all products or things

which may be sold by commission merchants. If so, the sale of all food products, all lumber products, all machinery, and any other class of personal property might be included in one act. If the legislature determine that there are not sufficient evils with reference to the sale of certain personal property by commission merchants to justify or require regulation, that is no reason why it may not in the same act include all such property as in its judgment needs regulation for the public good. As shown by the authorities which we have cited, there is no legislative discrimination so long as all persons of the same class and handling the same product are treated alike, but there is no rule which forbids the inclusion of more than one class of business in an act. We therefore cannot see any reason why lumber products and farm products may not be regulated by one legislative act. To say that forestry products are not agricultural products is beside the question and does not argue against the validity of the act.

(d) The act provides that any person "violating any provisions of this act shall be guilty of a misdemeanor." It is argued by respondent that this is in violation of our constitutional provision against imprisonment for debt, because elsewhere it is provided that the commission merchant must, within a designated time, make remittance to the producer. We agree with the trial court that there is no merit in this point.

In *Clark v. State,* 171 Ind. 104, 84 N. E. 984, the court said:

"But it is plain that this constitutional inhibition was directed against imprisonment for debt in civil actions at the instance of the creditor, with a view to coercing payment of his debt, and had no reference to such actions as might be brought by the state through

its officers in the interest of good morals and honest dealing.''

The purpose of the act is not to punish for failure to comply with the obligation to pay money, but the fraudulent intention with which the money is withheld. *Lamer v. State*, 120 Ga. 312, 47 S. E. 958; *Freeman v. United States*, 217 U. S. 539.

(e)   Section 8 of the act has given us much concern. It provides that, when a consignor is dissatisfied with the actions of his commission merchant, he may so report to the director of agriculture, who shall investigate the matter complained of, ''and if upon such investigation it appears that said commission merchant has failed or neglected to account for such consignment or any part thereof, or has failed or neglected to make a true and complete report thereof, it shall be the duty of the director of licenses, upon recommendation of the director of agriculture, to revoke the license of such commission merchant.'' It is claimed that this provision makes the act unconstitutional, because there is no provision for notice to the holder of the license prior to its revocation.

The spirit of our laws and institutions demands that a citizen be not deprived of his property or rights without notice. This act does not even intimate that, before annulling a license, the director of agriculture must give the holder a right to be heard. Under it the director may make a secret investigation and revoke the license before the holder thereof has any intimation that anything is being done with reference thereto. Manifestly the license is a thing of great value to the commission merchant, for under this law he may not prosecute his business at all without it. If it is revoked his business is destroyed, and yet he has not been given an opportunity to present his reasons why there should be no revocation.

The state argues that we should not in this action consider this question, because it is not rightfully before us, and that it will be time to decide it when the director of agriculture has either threatened to revoke the license or has actually done so. We cannot accept this view. The objectionable section is an important and integral part of the statute, and under its provisions a license may be taken away from the commission merchant at any time. It may be done before the merchant has any time to enjoin such an act. It is poor consolation to him to be told that he may not object to this provision of the law until his license has actually been revoked and his business destroyed. The matter has been elaborately argued and we think it is our duty to dispose of it at this time.

The state contends that the license is nothing more than a privilege and may be revoked at any time without notice. It is not a license of that character. It may not be revoked arbitrarily as a matter of right and without cause. We are cited to *State ex rel. Nowotny v. City of Milwaukee,* 140 Wis. 38, 121 N. W. 658, as holding that a board of health which is given power to issue a license may revoke it without notice if the act is not arbitrary. If this case so holds, we cannot concur with it.

It is also argued that the license is not property and, therefore, may be revoked without notice, and that the case of *People ex rel. Lodes v. Department of Health of City of New York,* 189 N. Y. 187, 82 N. E. 187, so holds. The act in question there provided that no milk should be offered for sale or delivery in the city without a written permit from the board of health, and that such permit was not property under the constitutional provision, but was merely a license, revocable by the board without notice to the holder.

Manifestly, that case is not controlling here. That was nothing more than a permit which apparently authorized the distribution of milk until it was revoked, but the license in this case authorizes the transaction of business for a definite period and is not only property, but very valuable property.

It is further argued by the state that the requirement of notice applies only to judicial proceedings and not to those before administrative officers. We can see no reason for such a distinction. As much damage may be done to the holder of the license by an administrative officer annulling it as by its annullment through an order of the court.

In *State ex rel. Baldwin v. Moore,* 7 Wash. 173, 34 Pac. 461, speaking of this subject, we said:

"The constitutional provision declaring that no person shall be deprived of life, liberty or property without due process of law is not limited to judicial proceedings, but extends to every proceeding which may interfere with those rights, whether judicial, administrative or executive."

Taylor, on Due Process of Law, page 292, says:

"In tax proceedings, and in certain summary processes before administrative officers, while the right to a hearing has been invariably recognized, the formalities attending it have been reduced to a minimum."

See, also, *Stuart v. Palmer,* 74 N. Y. 183.

It is further argued that, since the state and national constitutions demand that property may not be taken without notice and that such is the settled law, the courts will assume that the legislature intended that notice should be given, unless its act expressly or by necessary inference demands the contrary conclusion, and that, since there is nothing of that character in this act, we will read into it a notice requirement, or will assume that the director of agriculture will com-

ply with the general law and give an opportunity for a hearing.

An argument which in theory is just as plausible, and in practice more so, is that, since everybody knows that a legislative act is presumed to be constitutional until the courts declare to the contrary, the director of agriculture will do the natural thing and follow the authority given him by the legislative act and annul licenses without notice.

When courts are considering the constitutionality of an act, they should take into consideration the things which the act affirmatively permits, and not what action an administrative officer may or may not take.

The authorities on this question are in conflict. Those at least to some extent supporting the view of the appellants are: *State v. State Medical Examining Board,* 32 Minn. 324, 20 N. W. 238; *Baltimore & Ohio R. Co. v. Pittsburg, W. & K. R. Co.,* 17 W. Va. 812; *Enterprise Irrigation District v. Tri-State Land Co.,* 92 Neb. 121, 138 N. W. 171. In the last cited case, the court said:

"  . . .  we are of the opinion that where a statute under the police power of the state authorizes a proceeding affecting the property rights of any person, and does not expressly provide for notice to be given, the right to notice is implied, and that where a proper notice has been given, under a procedure authorized by the legislature, and a party has appeared, he has not been deprived of any of his rights without due process of law."

In the second case cited, the court held that:

"Where a statute authorizes a legal proceeding against any one, and does not expressly provide for notice to be given, it is implied that an opportunity shall be afforded him to appear in defense of his rights, unless the contrary clearly appears."

But the weight of authority and better reason seems to be to the contrary.

In *Stuart v. Palmer, supra,* the court said:

"It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has, in fact, been fairly apportioned. The constitutional validity of law is to be tested, not by what has been done under it, but by what may, by its authority, be done."

In *Beebe v. Magoun,* 122 Iowa 94, 97 N. W. 986, the court quoted the foregoing from *Stuart v. Palmer, supra,* and approved it.

In *Smith v. State Board of Medical Examiners,* 140 Iowa 66, 117 N. W. 1116, the court also quoted the *Stuart* case, *supra,* and said that the weight of authority supported the rule there announced.

McGehee, on Due Process of Law, page 82, says: "If notice and hearing are essential, they must be required by law."

Such, also, is the doctrine of the supreme court of the United States. In *Coe v. Armour Fertilizer Works,* 237 U. S. 413, the court said:

"Nor can extra-official or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that the Constitution requires."

The court then quotes the above expression from *Stuart v. Palmer, supra,* and says: "The soundness of this doctrine has repeatedly been recognized by this court."

In *Security Trust & Safety Vault Co. v. City of Lexington,* 203 U. S. 323, the court said:

"If the statute did not provide for a notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice, uncalled for by the statute, the taxpayer may have received in a particular case that is material, but the question is, whether any notice is provided for by the statute."

*Central of Georgia R. Co. v. Wright,* 207 U. S. 127; *Louisville & N. R. Co. v. Central Stock Yards Co.,* 212 U. S. 132.

In *Sterritt v. Young,* 14 Wyo. 146, 82 Pac. 946, 4 L. R. A. (N. S.) 169, the court held that the statute must expressly provide for such notice and that its omission in that respect cannot be supplied by implication.

In *Board of Education of Stillwater v. Aldredge,* 13 Okl. 205, 73 Pac. 1104, speaking of the question under discussion, the court says:

"After a careful examination of all the authorities at our command, we are clearly of the opinion that the statute must stand or fall as enacted by the legislature; and that; where no notice is provided, a court ought not to say that notice is implied; and, as has been said by other law writers, the question is not what was done, but what did the statute authorize to be done."

There are some cases which hold that, where a statute does not expressly provide for notice, but does inferentially, it is sufficient. See *Smith v. State Board of Medical Examiners, supra.* The act under consideration does not come within the purview of these cases.

We feel that to hold that the statute here implies notice simply because it would be unconstitutional without that implication, would be to beg the question and to lay the foundation for wrongs to be done to the holders of licenses. We are constrained to hold that § 8 is unconstitutional.

But it does not necessarily follow that the whole act must fall because § 8 is invalid. An entire act will fall only where the constitutional and unconstitutional provisions are so connected and interdependent in subject-matter, meaning and purpose that it cannot be believed that the legislature would have passed the one without the other, or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish any of the purposes of the legislature. Ordinarily, we would be disposed to say that the legislature would not have passed this act without some provision for the cancellation of licenses. But the last section expresses the legislative intent when it says that if ''any section or part of a section of this act shall, for any cause, be held unconstitutional, such holding shall not affect the rest of this act or any section thereof.'' By this provision the legislature has expressly overcome the presumption that we would ordinarily draw that the act would not have been passed but for some provision for the annulment of licenses. It has in effect said to the courts that if they declare § 8 to be unconstitutional, that shall not affect the remainder of the act. While, by striking that section, the act will be materially weakened, yet much that the legislature sought to accomplish may still be done under the remainder of the act, as, for illustration, the issuing of licenses, the making of reports as to the amount and character of the goods received, the payment of the sales price within a definite period, the giving of a bond to which the shipper may have redress, and other provisions. We have seen but one case which involved a legislative declaration such as exists here, and that is from this court. In *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, Judge Fullerton said:

"It is there expressly provided that the adjudication of invalidity of any part of the act shall not affect the validity of the act as a whole or any part thereof. This means that the legislature intended the act to be enforced as far as it may be, even though it might not be valid in its entirety. It was competent for the legislature so to provide."

We conclude, therefore, that the invalidity of § 8 and its elimination from the act will not have the effect of making the remainder of the act unconstitutional or inoperative.

(f) The complaint of the Northern Cedar Company alleges that a large portion of its business is of an interstate nature, and that since this act, by necessary inference, includes that character of business, it is violative of the Federal constitution giving to Congress exclusive jurisdiction over interstate commerce. The fact remains, however, that a part of the business of the cedar company is intrastate, and if the act is valid otherwise, it ought, in any event, to apply to that portion of the company's business. Such being true, it was error to overrule the demurrer. From this viewpoint the question of interference with interstate commerce is not necessarily before us; but since the matter has been elaborately argued, we deem it advisable to dispose of this feature.

The Federal government has never been disposed to be despotic in the enforcement of its rights against the states, and the supreme court of the United States has consistently held that, while the states may not directly tax, burden or interfere with interstate commerce, statutes enacted by them in the exercise of their reserved police power are not invalid simply because they may indirectly and to a slight extent—incidentally—affect such commerce. *Cargill Co. v. State of Minnesota, supra; Asbell v. State of Kansas,* 209 U. S.

251; *Brodnax v. State of Missouri,* 219 U. S. 285; *Hennington v. State of Georgia,* 163 U. S. 299. See, also, *State ex rel. Brewster v. Mohler,* 98 Kan. 465, 158 Pac. 408; *Northern Pacific R. Co. v. Schoenfeldt,* 123 Wash. 579, 213 Pac. 26. This statute was not passed for the purpose of affecting interstate commerce, and if it does so, it is purely in an incidental manner and does not trench on the rights given to Congress. To hold that a state law which incidentally affects interstate commerce is invalid would be to hold that the state may not regulate warehouses if they handle interstate commerce and may not enforce criminal statutes, because so to do might tend to obstruct such commerce. Respondent cites a large number of cases from the supreme court of the United States in support of its argument, but on account of the great length of this opinion we will not discuss them in detail. For the most part they concern state statutes the purpose of which was to directly levy a tax on interstate commerce. They do not involve statutes passed purely for regulatory purposes.

(g) Complaint is made of § 7 which requires the commission merchant to make a remittance to the producer within ten days following any sale. It is said that many sales must be made on credit and that the effect of the statute will be to require the merchant to remit before he has collected. But this result will not necessarily follow. It may simply have the effect of requiring the sale to be made for cash.

Complaint is also made because the law provides that the commission merchant shall not charge the producer for his services more than ten per cent of the selling price of the produce, unless it is otherwise agreed in writing. It is said that a charge of only ten per cent will be destructive of business because it is

wholly insufficient, and that the producer must suffer because much farm produce must be sold at once in order that it may not deteriorate, and that, under such circumstances, no opportunity being given to obtain a written agreement, the commission merchant will be forced to refuse to accept such produce. The legislature had a right to presume that, in instances such as respondents enumerate, contracts may be entered into between the producer and the commission merchant.

This and the provision with reference to making remittance may be unwise and may in the long run be detrimental to those they seek to protect. But they are matters entirely for the legislature. We are not given authority to consider them. We may consider whether the statute is constitutional, and not whether it is wise. If redress is needed in these matters, appeal must be made to the legislature.

(h) In oral argument something was said about the sufficiency of the title to the act, but the question was not presented in the briefs. We called for and have received additional briefs on this question only.

Article 2, § 19, of the constitution provides that "no bill shall embrace more than one subject and that shall be expressed in the title." The title to this act is: "An act relating to commission merchants engaged in selling any agricultural product and repealing ch. 139, Laws of 1907, p. 266, *supra,* and providing penalties."

Section one of the act defines "agricultural products" as including "horticultural, viticultural, forestry, dairy, live stock, poultry, bee or farm products."

The question, of course, is whether a forestry product is an "agricultural product" as expressed in the title. We think it is. We have held that this constitutional provision should be liberally construed and that the title need not be a complete index of the subject-

matter of the act, but that it will be sufficient if it fairly covers the matter legislated upon, and that a general title will include all matters incidental and germane thereto, and that objections to the title must be grave and the conflict between it and the constitution palpable before we will hold an act unconstitutional. *Lancey v. King County,* 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817; *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086; *Fisher Flouring Mills v. Brown,* 109 Wash. 680, 187 Pac. 399; *Marston v. Humes,* 3 Wash. 267, 28 Pac. 520; *State ex rel. Lindsey v. Derbyshire,* 79 Wash. 227, 140 Pac. 540; *State v. George,* 84 Wash. 113, 146 Pac. 378; *State v. Seattle Taxicab & Transfer Co.,* 90 Wash. 416, 156 Pac. 837; *State ex rel. American Savings Union v. Whittlesey,* 17 Wash. 447, 50 Pac. 119; *Hathaway v. McDonald,* 27 Wash. 659, 68 Pac. 376, 91 Am. St. 889; *Johnston v. Wood,* 19 Wash. 441, 53 Pac. 707; *State ex rel. Smith v. Board of Dental Examiners,* 31 Wash. 492, 72 Pac. 110; *Seymour v. Tacoma,* 6 Wash. 138, 32 Pac. 1077; *Archibald v. Northern Pacific R. Co.,* 108 Wash. 97, 183 Pac. 95.

Forestry products are agricultural products. "In its broad use it [agriculture] includes farming, horticulture and forestry, together with such subjects as butter and cheese making, sugar making, etc." Webster's New International Dictionary. "In a broad sense agriculture includes horticulture and forestry as well as what is ordinarily called farming." Nelson's Loose-Leaf Encyc. The dictionaries and encyclopaedias generally concur in the foregoing definition of agriculture. In *Maxwell v. Lancaster,* 81 Wash. 602, 143 Pac. 157, we said:

"Horticulture is a branch of agriculture and can be included in an act relating to agriculture, without violating the rule which prohibits the union in one act of disconnected and unrelated matters."

Respondents who attack the act as unconstitutional, in their additional brief, frankly admit that they think the title sufficient under our previous decisions.

The judgments are reversed and the cause remanded for action in accordance herewith.

MAIN, C. J., FULLERTON, PARKER, TOLMAN, and MITCHELL, JJ., concur.

MACKINTOSH and HOLCOMB, JJ., concur in the result.

PEMBERTON, J. (dissenting)—Section 8 provides for a written verified complaint to be filed against the commission merchant and for a hearing and determination of the charges against him. Certainly this implies that notice shall be given of such hearing and an opportunity afforded him to appear in defense of his rights.

Under the subject of constitutional law, in Corpus Juris, the author, after stating the rule that "the law authorizing the proceedings must require notice or it will be unconstitutional," lays down the exception to the rule as follows:

"But a statute will not be held unconstitutional for failure expressly to provide for notice, if the requirement of notice may be fairly implied from a consideration of all its provisions, and according to some authorities a requirement of notice is to be implied from the very fact that it is a constitutional requirement, irrespective of particular provisions in the statute under which the proceeding is had. Under this view the statute is not unconstitutional unless it undertakes to dispense with notice." 12 C. J. 1229.

"It has already been determined that a statute is not invalid merely by reason of the fact that it does not expressly provide for notice and hearing. It may be implied by the courts, unless the language of the statute excludes the theory that notice and hearing are necessary.     .     .     .

"Here the statute is not only open to an interpolation of notice and hearing, but its own language carries the plain implication that a hearing is to be had, and the Code provision relating to notices applies to a proceeding like the one in question, the same as it does to provisions for numerous other orders where there is no special mention that notices are to be given." *Tatlow v. Bacon,* 101 Kan. 26, 165 Pac. 835.

"Provision for notice and hearing need not be made in the statute by express words. It may be implied. In reality, the courts simply read the provision into the statute in order to uphold taxation schemes against the Fourteenth Amendment to the Constitution of the United States, which forbids any state to deprive any person of property without due process of law." Union *Pacific R. Co. v. City of Abilene,* 78 Kan. 820, 98 Pac. 224.

"We do not regard the omission to provide definite process to bring the city before the Commission at a hearing on the necessity for a safe crossing as being fatal to the acquirement of jurisdiction over the municipality by the Commission. The latter is both a court and an administrative tribunal. As a judicial body it has by implication all the powers necessary for the exercise of its duty." *City of San Jose v. Railroad Commission of State of California,* 175 Cal. 284, 165 Pac. 967.

"Where a statute authorizes a legal proceeding against any one and does not expressly provide for notice to be given it is implied that an opportunity will be afforded him to appear in defense of his rights unless the contrary clearly appears." *Baltimore & Ohio R. Co. v. Pittsburg, W. & K. R. Co.,* 17 W. Va. 812.

See, also, *State v. State Medical Examining Board,* 32 Minn. 324, 20 N. W. 238; *State v. Schultz,* 11 Mont. 429, 28 Pac. 643; *Smith v. State Board of Medical Examiners,* 140 Iowa 66, 117 N. W. 1116; *Savannah, F. & W. R. Co. v. City of Savannah,* 96 Ga. 680, 23 S. E. 847; *Baltimore Belt R. Co. v. Baltzell,* 75 Md. 94, 23 Atl. 74; *McCaslin v. Perrysburg,* 30 Ohio Cir. Ct. R. 103; *Buck-*

*walter v. School District No. 42*, 65 Kan. 603, 70 Pac. 605; *Whiteford v. Probate Judge*, 53 Mich. 130, 18 N. W. 593; *Enterprise Irr. Dist. v. Tri-State Land Co.*, 92 Neb. 121, 138 N. W. 171; *Conover v. West Jersey Mtg. Co.*, 87 N. J. Eq. 16, 99 Atl. 604; *Tatlow v. Bacon*, 101 Kan. 26, 165 Pac. 835.

The commissioner of agriculture is presumed to act fairly and not arbitrarily.

"Every reasonable presumption will be indulged in favor of the regularity and good faith of official action." *Cawsey v. Brickey*, 82 Wash. 653, 144 Pac. 938; *Quigley v. Phelps*, 74 Wash. 73, 132 Pac. 738, Ann. Cas. 1915A 679.

The statute in question is constitutional.