[No. 980.  Decided August 16, 1893.]

THE STATE OF WASHINGTON, *on the relation of Clinton Baldwin, Respondent*, v. C. M. MOORE, *County Auditor of Thurston County, Appellant.*

CONSTITUTIONAL LAW — PAYMENT OF TAXES AS PREREQUISITE TO RECORDING OF DEED — DUE PROCESS OF LAW.

The act of March 11, 1893 (Laws, 1893, p. 284), providing that the county auditor shall refuse to receive or record any deed of real property unless it is accompanied by a certificate of the county treasurer, that all taxes theretofore levied, and which have become a charge upon said property according to the records of his office, have been fully paid and discharged, is a violation of the constitu-

tional inhibition that no person shall be deprived of his property without due process of law.

*Appeal from Superior Court, Thurston County.*

*Milo A. Root,* for appellant.

*W. I. Agnew,* for respondent.

The opinion of the court was delivered by

SCOTT, J.—The question presented in this case involves the validity of that part of § 11 of the act approved March 11, 1893, relating to the duties of county auditors (Sess. Laws, 1893; p. 284, § 11), providing that the auditor shall refuse to receive or record any deed of real property unless it is accompanied by a certificate of the county treasurer "that all taxes theretofore levied, and which have become a charge on said property according to the books and records of his office, have been fully paid and discharged," and, if valid, whether or not a deed of assignment conveying real estate to an assignee in an insolvency proceeding, in trust to be disposed of therein for the benefit of creditors, is within the terms of the act. The first point stated will be first considered. If the act is held invalid, the second question becomes immaterial.

In *State v. Register of Deeds of Ramsey Co.*, 26 Minn. 521 (6 N. W. Rep. 337), a law substantially like this was held constitutional, and no case has been called to our attention directly holding otherwise; but it seems to be against the principles established by a number of cases in deciding somewhat similar questions. No provision is made in the act whereby an interested party can test the validity of the tax, or the truthfulness of the record. No matter how illegal or unwarranted the tax may have been, even if void, it must be paid before the grantee can have his instrument recorded. If it has been paid, and the records in the treasurer's office fail to show it, the same

result must follow, as the matter is made to depend entirely upon what is shown by the treasurer's records. It is argued that a person is not compelled to record his muniments of title, and that, as the right to have such instruments recorded is given by the law, the legislature may prescribe such terms and conditions therefor as it deems fit, if its action is only legislative in character, and that the act in question does not interfere with guarantied property rights. But in our opinion it cannot stand the test. Among the rights guarantied the citizen by the constitution is the right to acquire, hold and enjoy property, and that no person shall be deprived of his property without due process of law, and that private property shall not be taken for public use without just compensation having been first made or paid into court for the owner. The right to alienate property is essential to its use and enjoyment, as well as the right to acquire it, and both are constitutional rights. It cannot be said that this law does not interfere with the right to dispose of and acquire property, for unless the deed of transfer is recorded a subsequent purchaser for value without notice will take the title, and this is made so by other legislative enactments, and thus the original purchaser is placed without the protection of the law. Surely, such a state of affairs will most seriously interfere with and impair the right to sell and acquire; and when an unjust, illegal burden or restraint is imposed thereon, it is an unwarranted interference.

It is argued that if the tax is illegal the party may pay it, and then bring suit to recover it back; and in *State v. Nelson*, 41 Minn. 25 (42 N. W. Rep. 548), it was held that a payment under protest of illegal taxes to secure the recording of a deed was not a voluntary payment. But whether this is within the weight of the authorities, there may be some question. Only those payments which have been made under a claim involving the use of force have gener-

ally been regarded as involuntary, and not those which are merely unwillingly made, and as a choice of evils or of risks. Cooley, Taxation (2d ed.), pp. 809–815, and cases there cited. But, however this may be, it is no answer or justification if an action will lie to recover it back after payment, for if it is an illegal or void demand the state has no right to collect it in the first instance. The law in question is not a regulation of the matter of recording, but it imposes an independent, distinct burden upon the privilege and protection afforded by the recording acts, which may even amount to a prohibition. The records may show a tax amounting to more than the value of the property, and beyond the ability of the party to pay; and there is no alternative, no discretion being vested in the auditor or treasurer. And, although this is but a possible or probable result, it is entitled to consideration. In *Stuart v. Palmer*, 74 N. Y. 183, it was said that the constitutional validity of law is to be tested by what may, by its authority, be done under it. If the law provided a means by which the validity of the tax could be determined before payment, and protected the party meanwhile by providing for a temporary receipt of the deed, or otherwise, it probably could be sustained as constitutional, even though it should put the burden of proving the illegality of the tax upon the grantee, which, however, would look like an unnecessary hardship, when we consider the power possessed by the state to enforce the collection of its revenues. In the case of small illegal charges, the act in question practically inaugurates a system of petty robbery by the state, for the costs of a suit to recover small sums paid would prevent parties from bringing them. It is not a taking by due process of law, and it conflicts in a measure with the constitutional provision declaring that private property shall not be taken for public purposes without just compensation having been first made or paid into court for the owner. The act is

rather judicial than legislative in character. It, in effect, declares or adjudges all taxes shown by the records as a charge upon real estate to be lawful, or it practically authorizes the state to compel payment of illegal demands. The constitutional provision declaring that no person shall be deprived of life, liberty or property without due process of law, is not limited to judicial proceedings, but extends to every proceeding which may interfere with those rights, whether judicial, administrative or executive. *Stuart v. Palmer, supra.* In the case of an illegal tax, payment is virtually compelled by the situation, as a choice of evils, and the money is turned into the public fund for public purposes. If an action to recover it back would lie, it would result in obtaining a county warrant for the amount, generally payable after the lapse of some time, and perhaps with a depreciated value. In *Conway v. Cable,* 37 Ill. 82, it was held that the legislature could not declare an illegal tax sale valid, and doubtless the same rule would apply to an illegal levy. This case also holds that the legislature cannot impose unreasonable terms to the assertion of a right, and, in case of a void sale for taxes, could not require the owner to pay the redemption money as a condition to the right to assert his paramount title. In *Wilson v. McKenna,* 52 Ill. 43, holding the same, it was said that the effect of such a rule was to compel a man to buy justice. And see *Scammon v. City of Chicago,* 44 Ill. 269–277; *Reed v. Tyler,* 56 Ill. 288; *Dunn v. Snell,* 74 Me. 22; *Weller v. St. Paul,* 5 Minn. 95; *Tyson v. School Directors,* 51 Pa. St. 9; *Lassitter v. Lee,* 68 Ala. 287; *Hart v. Henderson,* 17 Mich. 218; *Sinclair v. Learned,* 51 Mich. 335 (16 N. W. Rep. 672); Cooley, Taxation (2d ed.), 459, 552–554. Such laws as this, which interfere with the citizen in the transaction of ordinary business, are not necessary to enforce the collection of any lawful demand due the state. If they could be so directed as only to operate against the person

12—7 WASH.

on whom the obligation to make the payment rested, no objection could be urged against them. These, however, are matters for legislative consideration and action, but within, of course, constitutional limits. While this law would only compel the payment of just demands in probably the majority of instances, the fact that it would also compel the payment of illegal claims in some cases, thus resulting in the greatest injustice, condemns it. In nothing is the state more vitally interested than in the complete fulfillment of the constitutional guaranty of protection to the life, liberty and property of the citizen.

Judgment affirmed.

HOYT and STILES, JJ., concur.

DUNBAR, C. J., and ANDERS, J., dissent.