[No. 6474. Decided November 10, 1906.]

THURSTON COUNTY et al., *Appellants,* v. TENINO STONE QUARRIES, INCORPORATED, *Respondent.*[1]

TAXATION—POLL TAX—UNIFORMITY—CONSTITUTIONAL LAW—POWER OF LEGISLATURE TO LEVY. A poll tax may be restricted to males over twenty-one years of age and under fifty, since the state constitution does not require uniformity therein, but the same may be by appropriate classification; and the above is not unreasonable or unjust.

SAME—PROCEEDINGS TO COLLECT—CONSTITUTIONAL LAW—TAKING OF PROPERTY WITHOUT DUE PROCESS OF LAW—STATUTES—CONSTRUCTION. The provision in the poll tax law requiring an employer to ascertain the names and pay the poll tax of all his employees subject thereto, under penalty of fine or imprisonment, is not a taking

[1]Reported in 87 Pac. 634.

of his property without due process of law in that it compels the payment without giving him or his employee his day in court, in view of Bal. Code, p. 223, § 4, and Bal. Code, §§ 4843-4845, providing for the institution of civil actions to collect the tax, wherein the employer may deposit the same in court, without incurring expense or liability for costs, and the employee can have his day in court.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered August 3, 1906, upon sustaining a demurrer to the complaint, dismissing an action for the collection of road poll taxes. Reversed.

*P. M. Troy,* for appellants.

*Vance & Mitchell,* for respondent.

Root, J.—This action was commenced by appellants for the collection of road poll taxes under the provisions of the statutes as found in the Laws of 1903, page 223, and as amended in 1905, and appearing at page 297 of the published Session Laws of 1905. The poll taxes sought to be collected were those alleged to be due from certain employees of respondent. The trial court held the statute unconstitutional. From a judgment dismissing the action, this appeal is taken.

Section 1 of the act of 1903, as amended in 1905, reads as follows:

"Every male inhabitant of this state between the ages of twenty-one and fifty years, outside the limits of an incorporated city or town, shall annually pay a road poll tax of two dollars, which shall be due and payable in money without exemption whatsoever on the first day of March in each year. All poll taxes shall be paid into the district road and bridge fund of the district in which the same shall be collected."

It is contended by respondent that this section of the statute is invalid, as being in conflict with §§ 3 and 12 of art. 1 of the state constitution, and contrary to the fourteenth amendment of the Federal constitution. The sections of the state constitution referred to are as follows:

"Sec. 1. No person shall be deprived of life, liberty or property without due process of law.

"Sec. 12.  No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

In the able briefs presented by each side, the case of *State v. Ide*, 35 Wash. 576, 77 Pac. 961, is cited and relied upon. That was a case involving the validity of an ordinance of a city of the third class, which provided for the collection of a poll tax from every male inhabitant of the city between the ages of twenty-one and fifty years and not a member of any volunteer fire company of the city.  Said ordinance was enacted pursuant to the provisions of Bal. Code, § 938 (P. C. § 3488).  Said statute was necessarily limited by § 9 of art. 7 of the state constitution, which provides that:

"For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."

It was urged by the appellant in that case—and the contention was upheld by this court—that the legislature, under the constitutional provision just quoted, had no power to authorize a municipality to enact an ordinance for the levying and enforcement of a poll tax that was not uniform as to persons; that the provision in the ordinance excepting females, firemen, and males over fifty and under twenty-one years of age, rendered said ordinance obnoxious to this section of the constitution.  The following excerpt from the opinion, rendered in that case, will show what was there involved.

"While it is conceded by counsel for appellant that the legislature may, in the absence of constitutional restrictions, 'confer upon a city almost supreme power over local taxation,' yet they contend that the tax in question, by reason of its lack of uniformity, is repugnant to § 9 of art. 7 of our constitution, and therefore void.  That section of art. 7 reads as follows:  'The legislature may vest the corporate

authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same.' Section 12 of art. 11, of the constitution, provides that, 'The legislature shall have no power to impose taxes upon . . . cities . . . or the inhabitants or property thereof, for . . . city . : . purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.' These two provisions are the only ones relating to the vesting of the power of taxation in municipal corporations. And they clearly indicate, especially the latter, that the legislature may authorize the taxation, by cities, of persons, as well as property, within their limits. Conceding, as we must, that the legislature had the right to delegate to cities of the third class the power to levy poll taxes on the inhabitants thereof, the question naturally arises whether, in this instance, they exercised the power in conformity with the constitution."

It is suggested by appellants, and conceded by respondent, that § 9 of art. 7 does not apply to the facts of the case at bar, and further, that there is no provision in the state constitution requiring a poll tax to be uniform as to persons unless §§ 3 and 12 of art. 1 have that effect.

The power to levy and enforce the payment of taxes is an incident of sovereignty, and under a state constitution like ours, is vested in the law-making department of the government. In the absence of any constitutional inhibition, it must be conceded that the legislature may provide for the levy and enforcement of a poll tax upon any or all of the citizens of the state, regardless of the question of uniformity. We are, therefore, brought to the question of whether said §§ 3 and 12, of art. 1, are infringed by the statute now before us. Respondent urges that the statute, by limiting the tax to male inhabitants between the ages of twenty-one and fifty,

discriminates in favor of, and extends a special privilege and immunity to, all other inhabitants, within the meaning of the constitutional provision above cited, and that the enforcement of such a statute would, in effect, amount to the taking of property without due process of law.

Appellants maintain that the nature and purpose of a poll tax is such that its application should not be universal, but by means of appropriate classifications, and that this requirement is fittingly and legally observed in the statute in question. We think this contention is sound and should be upheld. The propriety of the enactment and enforcement of statutes providing for a poll tax has been recognized ever since, and prior to, the foundation of our government. In our own commonwealth the first statute of this character was enacted in 1854, Laws 1854, page 331. In this and many other states, classifications similar to that here found have been provided. The reason for such classifications is found in the nature of the subject-matter itself. It was formerly the common practice, and is yet, if we are not incorrectly informed, for persons subject to poll tax to "work out" said tax upon the public highways. The inappropriateness of women being called upon to render such a service to the state is readily apparent. Other reasons for the exemption of females may be found in the fact that by law they are denied various privileges held and exercised by males, upon whom this tax may be levied, and it has always been the policy of the law to show some deference to women, by reason of the physical limitations imposed by nature. That there is an age when, by reason of immaturity, the imposition of this public service or tax should not be made, is evident, as is, likewise, the proposition that an age may be reached when a man should not be called upon to render this character of services, or pay a *per capita* tax. It is contended that the fixing of the ages at twenty-one and fifty is arbitrary. This is true; but the nature of the subject-matter makes it essential that arbitrary limits should be established. The same con-

tention might be made with reference to the statute which fixes the completion of twenty-one years as prerequisite to the privileges and obligations of legal manhood. Similar statutes limit the years during which one may become, or may be required to become, a member of the militia, or to serve upon a jury. It is doubtless true that people between the ages of twenty-one and fifty years, as a class, use the highways much more than those below the one, or above the other, of the limits mentioned.

Anent the arbitrariness of this law, respondent suggests this question: "Why should a man forty-nine years of age, living upon his farm by the side of a certain road, be compelled to pay a poll tax, while his brother, fifty-one years of age, with equally good health and strength, living upon an adjoining farm of like character and equal value, by the side of the same highway, is not subjected to such exactment?" The answer is simply this: Under such a law the older brother would have been subject to such tax for two years before the younger became of age. The latter will be exempt when he shall have completed the period through which the other has passed. The character and value of the property of each has no bearing upon the question. The underlying nature and purpose of a poll tax are disassociated entirely from any consideration of property. The state accords to every inhabitant, regardless of his property possessions, the protection and advantages of 'its laws and public institutions. By reason of these personal guaranties and benefits, it asks a tribute toward the support of the government from those beneficiaries who are physically qualified to contribute. It would be impracticable to examine and pass upon the physical ability of every individual to earn or pay this capitation tax. Hence, the adoption of a classification becomes imperative. That the average man between the ages of twenty-one and fifty is physically able to readily earn and contribute the amount of this tax must be conceded. That the average person in any of the three classes composed, re-

spectively, of women, males under twenty-one and males over fifty, is by nature or less able physically to do work or earn money, is self-evident. These distinctions, based upon the laws of nature, are such as the legislature was abundantly justified in recognizing.

"When the power of taxation is exercised considerations of public policy must dominate; and the only rule of equality in respect to taxation is that the same means and methods shall be applied impartially to all constituents of each class, so that the law shall act equally and uniformly upon all persons in similar circumstances." 8 Cyc. 1071.

Other states with similar constitutional provisions have, for scores of years, maintained and enforced poll-tax statutes with practically the same classification as found in this. Long acquiescence in the existence and enforcement of such enactments is evidence that they have not been deemed obnoxious to constitutional limitations. *Faribault v. Misener*, 20 Minn. 396; Cooley, Const. Lim. (6th ed.), 81-85. Had the people, when preparing and adopting our state constitution, desired to change or avoid this kind of classifications in poll-tax statutes they would doubtless have used appropriate language to have clearly expressed such purpose. In view of these, and other considerations that might be mentioned, we do not think that the classification made by this statute was unreasonable, unjust or illegal.

It is further contended by respondent that § 3 of the act of March 16, 1903, page 223, Laws of 1903, is unconstitutional in that its enforcement would constitute a taking of property without due process of law. Said section of the statute reads as follows:

"Any person, firm or corporation or company, or agent thereof, having persons in his or their employ liable to pay a poll tax as hereinbefore provided, shall upon demand duly made by such collector, furnish a list showing the names of all persons so employed, and the wages due and owing to each of such employees, and if the amount of said poll tax be then

due it shall be paid at once to the collector by said employer. Any such employer refusing to furnish such list upon demand shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not exceeding one hundred dollars, and may also be imprisoned in the county jail not exceeding one month. And any payment made by said employer as herein provided shall be a complete defense in any suit or action brought by the employee for such sum or sums."

It is argued that no provision is made for testing the correctness of an employee's poll tax sought by this statute to be enforced against his employer, and that the payment by the latter would not be binding upon such employee for the reason that he would be without his day in court, and could recover from his employer the amount of such tax paid without his direction. In support of this contention, respondent cites the case of *Baldwin v. Moore*, 7 Wash. 173, 34 Pac. 461, where this court held that a statute forbidding the county auditor to file a deed conveying any property upon which there were unpaid taxes was unconstitutional. We do not think that decision is applicable to the facts of this case. In the statute there under consideration there was no provision made for any judicial proceeding, or other means of ascertainment by the auditor, as to the correctness or legality of the tax shown by the record. He was arbitrarily commanded to refuse the registration of a deed if the tax records showed an unpaid tax, regardless of what he believed or knew as to the invalidity of such tax or apparent tax. In the case at bar, it is the duty of the employer to ascertain who of his employees are subject to this tax, and he is not required to put upon the list the name of any servant who is not liable to pay such poll tax. If, after making a proper investigation, he reports one of his employees as liable for the payment of a poll tax, when, as a matter of fact, such employee is not liable, the consequence must be attributed to his mistake, as in any other case of error, and not to any fault in the law. If, upon investigation, he finds that one of his em-

ployees claims to be not liable for said tax, and he has any reason to believe such contention correct, he may so report or refuse to put the name of such employee upon the list required by the statute. If he is sued by the county for the poll tax of an employee who claims to be not liable, and as to whose liability the employer has a doubt, he may pay the amount of such poll tax into the court where the county may summon said employee to participate in a hearing as to his liability. Bal. Code, §§ 4843, 4844 (P. C. §§ 582, 584). Section 4 of the act of 1903, page 223, Laws of 1903, reads as follows:

"The county commissioners or any poll-tax collector may in the name of the county where any poll tax is sought to be collected, invoke in the collection of such tax any process of civil procedure authorized by law. Public officers of this state shall render any service demanded by the commissioners or any collector duly authorized by them, without charge or fee of any kind: *Provided*, That the county commissioners may allow in the case of public officers who receive their compensation by fees such allowance chargeable against the taxes as they may deem just."

It will thus be seen that this section authorizes the bringing of an action by the county commissioners, or poll-tax collector, whenever a poll tax is sought to be collected. This affords an opportunity to test the legality of the tax. In this particular the statute is entirely different from that involved in the case of *Baldwin v. Moore, supra,* where no such provision existed. Section 4844, *supra,* reads as follows:

"In all actions commenced under the preceding section, the plaintiff may disclaim any interest in the money, property, or indebtedness, and deposit with the clerk of the court the full amount of such money or indebtedness, or other property, and he shall not be liable for any costs accruing in said action. And the clerks of the various courts shall receive and file such complaint, and all other officers shall execute the necessary processes to carry out the purposes of this section, and also sections 4843 and 4845, of this code, free from all

charge to said plaintiff, and the court, in its discretion, shall determine the liability for costs of the action."

Under this section the employer can, without any costs, avoid responsibility in any case where his employee disputes the legality of his poll tax; and the employee can likewise have his day in court. Perceiving nothing calculated to infringe the constitutional guaranties, and recognizing the principle that a legislative enactment should be held unconstitutional only where its invalidity is clearly evident, we are led to uphold the statute in question. As bearing upon the matters herein considered, we may cite the following authorities: Cooley, Const. Lim. (6th ed.), pp. 629, 630-1, 703-6, and Id. (7th. ed.), pp. 225, 2524; Judson, Taxation, §§ 431, 434, 438-9; Miller, Constitution, 668; 2 Dillon, Mun. Corp. (4th ed.), §§ 762, 817; 8 Cyc. 1049, 1071; Tiedeman, Mun. Corp., §§ 260, 260a; 27 Am. & Eng. Ency. Law (2d ed.), 604; *State v. Ide,* 35 Wash. 576, 77 Pac. 961; *Fleetwood v. Read,* 21 Wash. 547, 58 Pac. 665, 47 L. R. A. 205; *State v. Clark,* 30 Wash. 439, 71 Pac. 20; *State v. Nichols,* 28 Wash. 628, 69 Pac. 372; *Stull v. DeMattos,* 23 Wash. 71, 62 Pac. 451, 51 L. R. A. 892; *Nathan v. Spokane County,* 35 Wash. 26, 76 Pac. 521; *Seabolt v. Northumberland County,* 187 Pa. St. 318, 41 Atl. 22; *Hall v. Judge etc.,* 88 Mich. 438, 50 N. W. 289; *Francis v. A. T. & S. F. R. Co.,* 19 Kan. 303; *Sawyer v. Alton,* 4 Ill. 126; *Dennis v. Simon,* 51 Ohio St. 233, 36 N. E. 832; *Kuntz v. Davidson County,* 6 Lea. (Tenn.) 65; *Faribault v. Misener, supra; State v. Womble,* 112 N. C. 862, 17 S. E. 491.

The judgment of the honorable superior court is reversed, and the case remanded for further proceedings not inconsistent herewith.

MOUNT, C. J., DUNBAR, CROW, RUDKIN, FULLERTON, and HADLEY, JJ., concur.