[No. 18880. Department Two. December 16, 1924.]

SHERMAN CLAY & COMPANY et al., *Appellants*, v. EDWIN J. BROWN, *as Mayor of the City of Seattle, et al., Respondents.*[1]

CONSTITUTIONAL LAW (100, 102, 116)—CLASS LEGISLATION—PRIVILEGES AND IMMUNITIES—REGULATION OF BUSINESS—SECOND HAND DEALERS. An ordinance regulating dealers in second-hand goods, excepting dealers in stoves, furniture or the total contents of any room or house, is contrary to Const., Art. I, § 12, prohibiting the granting of special privileges or immunities except upon the same terms to all.

MUNICIPAL CORPORATIONS (44)—STATUTES (9)—PARTIAL INVALIDITY—EFFECT. The partial invalidity of an ordinance regulating dealers in second-hand goods, excepting dealers in stoves, furniture or the total contents of any room or house, invalidates the entire ordinance, where it was not complete within itself after eliminating the provisions granting special privileges and immunities, and where the court cannot say that the act would have been passed without the inclusion of those illegally exempted.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered July 29, 1924, upon

[1]Reported in 231 Pac. 166.

sustaining a demurrer to the complaint, dismissing an action to enjoin the enforcement of a city ordinance. Reversed.

*Roberts & Skeel* and *J. J. Geary,* for appellants.

*Thomas J. L. Kennedy* and *Ray Dumett,* for respondents.

MACKINTOSH, J.—The council of the city of Seattle passed an ordinance (No. 45727) for the regulation of second-hand dealers. The first section of the ordinance provides that it shall be deemed an exercise of the police power. The third section defines second-hand dealers as follows:

"Any person who, within the city of Seattle, shall as a business engage in the purchase, sale, trade, barter or exchange of second-hand goods, or any person who shall keep any store, shop, room or place where second-hand goods of any kind or description are bought, sold, traded, bartered, exchanged or received, is hereby defined to be a second-hand dealer within the meaning of this ordinance."

The fourth section provides for the procuring of a license, and the sixth is as follows:

"Every second-hand dealer shall keep a book in which he shall at the time of purchase of any second-hand goods enter, in the English language, written in ink, a full and accurate description of such goods so bought, together with the name, age, signature and residence of the vendor, and if the vendor shall be a minor, a statement of that fact, also the amount paid and date and hour of the purchase, and said book as well as every article or thing purchased shall at all reasonable times be open to inspection by the Chief of Police or any police officer of the city of Seattle. Second-hand goods of any kind and description bought or received by any second-hand dealer must be held at least ten (10) days before they are sold or offered for sale, except when the goods bought or received con-

sist of stoves, furniture, or the total contents of any room or house bought on the premises where such goods have been in use.''

Section 7:

''Whenever any second-hand dealer shall purchase stoves, furniture of the entire household, effects of any house or of any household, it shall be deemed a sufficient compliance with the provisions of the preceding section, to enter in his book the name of the street, the number of the house and the name of the vendor, and a general description of the property purchased.''

Section 8 provides that every second-hand dealer shall make out and deliver to the chief of police before noon of each day a copy of the transactions on his books relating to second-hand transactions of the previous day. Section 10 provides that a violation of the ordinance shall constitute a misdemeanor, and § 11 provides for the revocation of the license. This ordinance is purely a regulatory ordinance, passed in the exercise of the police power, and is in no wise a revenue measure.

The appellant by this action seeks to have the ordinance declared invalid and inoperative as to it. The complaint, to which a demurrer was sustained, which brings the action here on appeal, alleges that the appellant for many years has been engaged in the piano, phonograph and general musical business, and has never been what is generally known as a second-hand dealer; it has never kept a store or place where second-hand goods were bought and sold, but that in its business of selling pianos and phonographs it occasionally receives a piano or phonograph in exchange for a new one, but that this exchange business is confined solely to pianos and phonographs which are taken directly from the homes of the purchasers and replaced there by a new article; that the dealings are with per-

sons of good standing, and that always a bill of sale is taken by the appellant for the used piano or phonograph, and that these exchanges constitute a very small portion of its general business; that no second-hand article is ever purchased and none is ever sold from the appellant's store, but that these articles are otherwise disposed of.

The ordinance is attacked on more than one ground, but in this opinion we will consider only that attack which is made on the ground of its discrimination.

The ordinance may be said, by § 3, generally to embrace all persons who deal in any way with second-hand property. It is apparent that this regulatory ordinance was passed with the purpose of preventing, or at least keeping check of, the disposition of stolen goods or otherwise improperly acquired personal property. It is common knowledge that when the way is made difficult for the thief and embezzler to find a ready market for the fruits of his endeavor that, to a large extent, his activities are curbed, and §§ 6 and 7, provide the means by which easy knowledge may be obtained by the police authorities of the location of goods improperly disposed of. For the full enforcement of its manifest purpose, the act provides that second-hand dealers shall not dispose of the goods bought or received by them for a period of ten days after the purchase or receipt. This, of course, is to allow an opportunity for the police department to make a full investigation of any transaction reported to them which may have occasioned their suspicion. But this provision, by § 7, is made not applicable to stoves, furniture or the total contents of any room or house. Why this distinction? There appears no reasonable ground upon which it can be defended. Certainly, under the allegations of the complaint, there appears to be no distinction in fact between appellant's receiving pianos

and phonographs and the receipt by someone else of a stove or a chair. Allowing purchasers or receivers of stoves or chairs to dispose of them immediately, and compel the purchaser or receiver of any other personal property to tie up so much of his capital as he may have invested in such property for a period of ten days, is abhorrent to the most primitive idea of fairness and equality. Such a provision is contrary to § 12, art. 1, of the state constitution prohibiting the granting of privileges or immunities except upon the same terms.

In *In re Camp*, 38 Wash. 393, 80 Pac. 547, a peddler's license was involved which prohibited all except farmers disposing of produce grown by themselves from peddling fruits, vegetables, etc., within the city limits, and that act was held unconstitutional, the court saying:

"It has been held that a classification may be valid if the object of the legislation is revenue, and invalid if the object is regulation only. . . Even if it should be conceded that such a classification for the purposes of revenue and taxation may be made, still, since there is no element of taxation involved, we think the classification made by the ordinance grants special privileges in violation of art, 1, § 12, of the state constitution, . . . ."

In *Spokane v. Macho*, 51 Wash. 322, 98 Pac. 755, 130 Am. St. 1100, 21 L. R. A. (N. S.) 263, the ordinance was one regulating employment agencies. The court there said:

"It was frankly admitted in the argument of this case that § 7 was enacted for the purpose of regulating the business of employment agencies. When exercising its power to regulate a business, the municipality may classify subjects of legislation, but the law must treat alike all of a class to which it applies, and must bring within its classification all who are similarly situated or under the same condition. From the very nature of things, there can be no dissimilarity of condition or

situation between the employment agent who indulges in a false pretence and any other person who resorts to deceit or fraudulent representations to accomplish a wayward purpose.''

This case emphasizes a situation which is present in the case at bar, and it might be, as we will see from a citation of subsequent cases, that, in the exercise of its regulatory powers, the city might pass an ordinance creating a certain class of persons subject to that regulation and excluding others from the operation of it; but when, as in the case at bar, it makes a general classification which covers all persons, say, dealing in second-hand goods, it cannot thereafter, without being guilty of discrimination, exempt a part of those of the general class covered by the ordinance from the operation of such ordinance. In other words, as noted in the *Macho* case, *supra,* what is attempted to be done here is to exempt a class within a class. Certain kinds of second-hand dealers are allowed certain privileges and immunities not granted to the balance, and this without any reasonable distinction between the characters of their businesses.

In *State v. Robinson Co.,* 84 Wash. 246, 146 Pac. 628, the court was concerned with an act requiring the recording of the sale of concentrated commercial feed stuffs, and, in holding that act unconstitutional, we said:

''We are satisfied that, under the rule in these cases, the act under consideration is clearly in violation of the constitutional provision quoted, because it authorizes cereal and flour mills to sell mixed and unmixed feeding stuffs, while other persons selling the same feeding stuffs are required to comply with the provisions of the act. It is plain, we think, that § 13, . . . for that reason, renders the whole act void.''

In *McDaniels v. Connelly Shoe Co.,* 30 Wash. 549, 71 Pac. 37, 94 Am. St. 889, 60 L. R. A. 947, it was held

that an act prohibiting retail merchants from transferring their stock of merchandise in bulk without making a provision for the payment of creditors was not class legislation merely because it did not apply to all persons or property, *so long as it applied equally to all persons engaged in the merchandising of goods,* recognising the rule that the legislative body might, without violation of the constitutional provision, recognize the necessity of regulating a certain class of business, although other businesses of a similar nature might not be included in that regulation, but that having made that classification, as long as there was some reasonable or just difference between the persons brought under the act and those excluded from its operation, the act must apply alike to all persons coming within the act. The court said:

"It is true that the mere fact of classification is insufficient to relieve a statute from the reach of this clause of the constitution,—that it must appear that the classification is made upon some reasonable and just difference between the persons affected and others, to warrant classification at all; but, applying this test, the act is sufficient. The reason is found in the nature of the business itself. It is well known that the business of retailing goods, ware, and merchandise is conducted largely upon credit, and furnishes an opportunity for the commission of frauds upon creditors not usual in other classes of business. In fact, charges of fraud made against retail dealers who have sold their stocks in bulk are among the most common with which the courts are called upon to deal. Legislation, therefore, which restricts the absolute right of persons engaged in such business to transfer their property, so long as it applies alike to all persons engaged therein, is not class legislation, within the meaning of the constitution, merely because it does not apply to all owners of property."

In *McKnight v. Hodge,* 55 Wash. 289, 104 Pac. 504, 40 L. R. A. (N. S.) 1207, there was involved a statute

requiring a county license from peddlers, except peddlers of agricultural and farm products and of books, periodicals and newspapers, and it was held that the act arbitrarily distinguished between persons apparently in substantially the same situation, yet that the classification was reasonable, and therefore there was not included in that case the question of whether, after having provided for the licensing of certain peddlers, some of those peddlers might have different privileges and immunities than others also licensed. To make that case like the one in hand, the statute should have been one applying to all peddlers, but providing that all but those peddling potatoes or cabbages would have to give a bill of sale with each purchase. It is also to be noted that the act there under investigation was a revenue measure and not a regulatory one:

"This argument is based upon the assumption that all peddlers are necessarily in the same class, and that the legislature has no power to recognize subclasses within the general class, but must grant privileges or immunities to or withhold them from all peddlers alike. . . It is urged that the law discriminates arbitrarily and without reason between peddlers in cities and towns and elsewhere in the state, by exempting the former when their licensing is regulated by ordinance of such cities and towns. Like the other classification we have noted above, it seems to us this is a question of legislative policy. As a revenue measure the legislature certainly is authorized to delegate the power to cities and towns and suspend the operation of the law there, when such cities and towns act on the subject, and it is not necessary to the preservation of equal rights that the police power of the state should be exercised by uniform regulations all over the state."

In *Town of Sumner v. Ward,* 126 Wash. 75, 217 Pac. 502, a city ordinance requiring all persons peddling certain articles of common household use to obtain

a license was held not to be in violation of the constitutional provision to which we have referred. The object of that act was probably nothing more than revenue. The court properly sustained it, recognizing that:

". . . an ordinance may be valid if its object is revenue, although invalid if its object is regulation."

But even considering it as being a regulatory one, the court sustained it because there did not appear an unjust distinction between those persons excluded and those included within its operation. But the question in the instant case did not exist in that case, for, as we have said, under the ordinance here no person dealing in second-hand goods is excluded, but after having placed them all within the operation of the ordinance, it provides that certain ones of them shall have privileges and immunities which others do not enjoy, and that some must be subject to harsher conditions than others.

We come, therefore, to a consideration of the effect of the invalidity of §§ 6 and 7. The question is, whether those provisions being invalid, the whole ordinance is thereby rendered void. The rule is, as stated by Cooley on Constitutional Limitations (6th ed.), p. 211, that the balance of an act, after the removal of a portion of it on account of invalidity or unconstitutionality, will not be sustained unless "that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, . . ." Look at the ordinance here. It is apparent that it is not complete within itself after eliminating the provisions granting to a certain portion of second-hand dealers privileges and immunities attempted to be given in §§ 6 and 7, and the court cannot say that

the city council would have passed the act without the inclusion of those exempt. The purpose of the ordinance is destroyed by eliminating the exceptions in §§ 6 and 7; the regulation remaining would amount to nothing and there would remain but a mere licensing enactment. It is very clear that the council had no such intent and would not have passed such an ordinance. In such a situation, it must be held that the entire act is vitiated by the unconstitutional and invalid portion thereof, and that it must all fall. In *Skagit County v. Stiles,* 10 Wash. 388, 39 Pac. 116, we said on this point:

"The legislature might have been willing to subject the petitioners for such improvements to the burden of paying the cost of the right of way where the same is obtained under the power of eminent domain, and the compensation adjudged by the commissioners, with the right of an appeal therefrom to the courts, but might have been unwilling to do so if such compensation was to be determined and allowed according to the arbitrary judgment of the commissioners."

In *Palmer v. Laberee,* 23 Wash. 409, 63 Pac. 216, there was quoted with approval this extract from Black, Interpretation of Laws, p. 96:

" 'The rule is that, if the invalid portions can be separated from the rest, and if, after this excision, there remains a complete, intelligible, and valid statute capable of being executed, and conforming to the general purpose and intent of the legislature, as shown in the act, it will not be adjudged unconstitutional *in toto,* but sustained to that extent.     .     .     . But when the parts of the statute are so mutually dependent and connected, as conditions, considerations, inducements, or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the

provisions which are thus dependent, conditional, or connected must fall with them.' "

In *Nathan v. Spokane County*, 35 Wash. 26, 76 Pac. 521, 102 Am. St. 888, 65 L. R. A. 336, it was held that the above quotation stated the rule, and further quoting the following from Cooley, Constitutional Limitations (6th ed.), page 210:

" 'Where, therefore, a part of the statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed that the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall.' "

In *State v. Powles & Co.*, 90 Wash. 112, 155 Pac. 774 the court said:

"As to the state's argument that we should now throw out this vague section and go on with the rest, that cannot be considered. This is far from a situation where that is permissible. That we can do only when it is clear that the legislature would have passed the act even without the ejected provision. But nobody can say here that it would have done so. The very contrary is apparent.    .    .    .    The definition pervades this act. It is essential to all of it, and the whole statute is void through its undeniable deficiency."

See, also, *State v. Winsor,* 50 Wash. 407, 97 Pac. 446, and *Gantenbein v. Pasco,* 71 Wash. 635, 129 Pac. 374, 131 Pac. 461.

Where the unconstitutional portion is easily separable from the remainder of an enactment and it can be said that the legislative body would have passed it with such portion eliminated, the remainder of the law

has been held to be unaffected by the removal of such portion and has been sustained. The cases so holding have always recognized the rule stated in the cases already quoted from, but the court has found in them that the parts were separable and the acts would have been passed with the invalid portions absent. *Pullman State Bank v. Manring*, 18 Wash. 250, 51 Pac. 464; *Shook v. Sexton*, 37 Wash. 509, 79 Pac. 1093; *State v. McFarland*, 60 Wash. 98, 110 Pac. 792, 140 Am. St. 909; *State v. Bowen & Co.*, 86 Wash. 23, 149 Pac. 330, Ann. Cas. 1917B 625; *Seattle v. Hewetson*, 95 Wash. 612, 164 Pac. 234; *State ex rel. French v. Clausen*, 107 Wash. 667, 182 Pac. 610; *Swanson v. School District No. 15*, 109 Wash. 652, 187 Pac. 386.

The ordinance being wholly invalid by reason of the discriminations contained therein, the demurrer to the complaint should have been overruled.

We have not discussed the questions of whether the ordinance, in any event, does not apply to appellants, and whether it is invalid as being beyond the power of the city. Those questions are still open.

Judgment reversed.

MAIN, C. J., HOLCOMB, FULLERTON, and PARKER, JJ., concur.