[No. 25070. Department One. August 27, 1934.]

LLOYD GARRETSON COMPANY et al., Appellants, v. WALTER G. ROBINSON, as State Director of Agriculture, et al., Respondents.[1]

[1]Reported in 35 P. (2d) 504.

602

Richards, Gilbert & Conklin, for appellants.

The Attorney General and George G. Hannan, Assistant, for respondents.

Patterson & Patterson, amicus curiae.

MAIN, J.—The plaintiffs brought this action to restrain the defendants, the director of agriculture of this state and one of his deputies, from enforcing, as against them, chapter 67 of the Laws of 1933, p. 342 (Rem. 1934 Sup., § 8292), which was entitled, an act relating to merchants engaged in buying and selling agricultural products, and amending certain sections of the prior law. To the complaint, a demurrer was interposed and sustained. The plaintiffs elected to stand upon their complaint, as amended by stipulation, and refused to plead further. Judgment was entered dismissing the action, from which they appeal.

The appellants, at the time of bringing the action and for many years prior thereto, had been dealers engaged in buying and selling, for profit, in the ordinary course of business, horticultural and agricultural

products in Yakima county, none of the appellants being a non-profit cooperative marketing organization or exclusively retail merchants having a fixed place of business.

In 1907 (chapter 139, Laws of 1907, p. 266), the legislature passed an act regulating commission merchants and persons selling farm, dairy, orchard and garden products on commission. This act required a license and the giving of a bond by those coming under it. The previous act of 1895 was by that act repealed. In *State v. Bowen & Co.*, 86 Wash. 23, 149 Pac. 330, Ann. Cas. 1917B, 625, the constitutionality of the 1907 act was sustained.

In 1923 (chapter 134, Laws of 1923, p. 366), the legislature passed an act relating to commission merchants engaged in selling agricultural products and repealed the act of 1907. The 1923 act defined the term "agricultural product" to include horticultural, viticultural, forestry, dairy, livestock, poultry, bee or "farm product." That act defined "commission merchant" as meaning any person or corporation that received any agricultural product to be sold on commission for the account of another and excluded from its operation "non-profit cooperative marketing organizations." The constitutionality of the 1923 act was sustained in the case of *Northern Cedar Co. v. French*, 131 Wash. 394, 230 Pac. 837.

In 1925 (chapter 194, Laws of 1925, Ex. Ses., p. 586), the legislature passed another act relating to commission merchants engaged in selling agricultural products other than grain, and repealed the act of 1923. That act provided that within the term "agricultural product" there should be included "any horticultural, viticultural, dairy, livestock, poultry, bee or farm product other than grain." Like the preceding act, it defined "commission merchant" to mean any

person or corporation who received any agricultural product to be sold on commission for the account of another, and exempted from its operation non-profit cooperative marketing organizations. This act differs from the previous act, in that it covers farm products "other than grain," while the previous act did not make that exception.

In 1933 (chapter 67, Laws of 1933, p. 342), the legislature passed an act relating to merchants engaged in buying and selling any agricultural product except livestock, and amended §§ 1, 2 and 3 of chapter 194, Laws of 1925, Ex. Ses., pp. 586, 587. This act, like the previous act, included farm products other than grain. It defined "commission merchant" to include all persons or corporations who received any agricultural product to be sold on commission for the account of another, or

". . . who buys such product from the producer thereof for the purpose of resale, but shall not include nonprofit cooperative marketing organization nor exclusively retail merchants having a fixed place of business." Rem. 1934 Sup., § 8292.

For the first time, there is brought into this act the provision bringing one under the act who buys any of the products therein mentioned from the producer for the purpose of resale and excluding from that operation retail merchants having a fixed place of business. Whether those purchasing agricultural products mentioned in the act from the producer for the purpose of resale may be included within the designation of "commission merchants" is not a matter of controlling importance. The question is not what they are called, but whether they may be properly brought under the regulation provided by the act.

It is said that the act offends against the fourteenth amendment to the Federal constitution, which

provides that no person shall be denied the equal protection of the laws; § 3 of article I of the constitution of this state, which provides that no person shall be deprived of property without due process of law; and § 12 of that article, which says that no law shall be passed granting to any citizen or corporation, other than a municipal corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations.

A legislative act is not violative of any of the constitutional provisions mentioned so long as the classification involved is reasonable and has a fair basis. It is generally held that the courts will not look too nicely into legislative acts to determine whether a reasonable distinction exists. A discrimination is valid if not arbitrary in the legislative sense, and a classification may rest on narrow distinctions.

In *State v. Cannon,* 125 Wash. 515, 217 Pac. 18, it is said:

"The settled rule is that a discrimination is valid if not arbitrary in a legislative sense, that is, outside of the wide discretion that the legislature may exercise, and only when it clearly appears that no reasonable distinction exists may we hold the legislative action to be unconstitutional."

In *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837, it is said:

"But a legislative act such as this is not violative of constitutional inhibitions so long as the classification involved is reasonable and has some fair basis, and it is universally held that the courts will not look too nicely into legislative acts to determine whether a reasonable distinction exists."

In the case of *German Alliance Insurance Co. v. Kansas,* 233 U. S. 389, 34 S. Ct. 612, L. R. A. 1915C, 1189, it was said:

"A legislative classification may rest on narrow distinctions. Legislation is addressed to evils as they may appear, and even degrees of evil may determine its exercise."

That excerpt was quoted with approval in the Northern Cedar Co. case.

■ We now come to the question of whether there was any reasonable basis for requiring those who purchase agricultural products from the producer to comply with the provisions of the act and not require those who purchase from those other than the producer to comply therewith.

It may be that, since the development of the automobile truck as a means of transportation of merchandise, there has grown up a business of considerable magnitude conducted by the operators of trucks who buy directly from the producer, load it into their trucks, take it to the populous centers and there sell it to small dealers or consumers. In fact, it is so stated in appellants' brief. We cannot say, as a matter of law, that the evils that may have grown up in connection with this business were not different from those that would exist where the purchase was made from other than the producer. The legislature may have determined that the same incentive and opportunity for evil sought to be corrected did not present themselves where purchases of the products mentioned in the act were made from others than the producer.

In the case of People v. Perry, 212 Cal. 186, 298 Pac. 19, 76 A. L. R. 1331, the court had before it the question of the constitutionality of an act of the state of California which provided that a purchaser of deciduous fruits, including dates and grapes, who contracted to pay the purchase price, upon demand, following delivery, and failing in that regard, should be guilty of an offense, and held the act to be constitutional. With

reference to growers and producers, as distinguished from others, it was there said:

"The act in question has for its obvious purpose the protection of the growers and producers of deciduous fruits in the state of California against the fraudulent conduct and acts of unconscionable persons who, representing themselves to be cash buyers, purchase and receive the delivery and ownership of their said products, and having done so, wilfully fail or refuse to pay for the same upon demand and in accordance with the terms and conditions of their purchase thereof. The statute in so providing in nowise interferes with the freedom of contracts and works no deprivation of either liberty or property when it undertakes to visit severe penalties upon those who, thus representing themselves to be cash buyers of the grower's or producer's products, undertake to defraud such grower or producer out of the price and profit of his product with which he has thus been induced to part ownership and to rely upon the purchaser's promise to pay upon demand."

In the case of *Mims v. City of Fort Worth*, 61 S. W. (2d) (Tex. Civ. App.) 539, the court had before it an ordinance which made it unlawful for any person or corporation to maintain an establishment for sale, at wholesale, of fruits and vegetables, or for wholesale distribution of fruits and vegetables within the corporate limits of the city, without first having obtained a license therefor; and it was provided that the ordinance should not apply to persons offering for sale fruits or vegetables grown or produced by such persons so far as the license fee was concerned. The ordinance was sustained.

Likewise, in this state, it may be that the producer in many instances was or would be induced to part with his products upon the part of the operator of the truck who was irresponsible and who should not thereafter pay for the same. The producer, in many instances,

being far from the center of population where the products would be disposed of, would be more easily imposed upon than one engaged in the business of selling agricultural products who was not a producer thereof. There being a reasonable basis for the distinction, the act was within the scope of the legislative discretion of the legislature, and was not arbitrary.

■ As above indicated, the act excludes from its operation non-profit cooperative marketing organizations which purchase from the producer. In the case of *Northern Cedar Co. v. French*, 131 Wash. 394, 230 Pac. 837, that provision, which was in the prior acts, was distinctly sustained, and no further reference will be made to it here.

■ The provision in the 1933 act excluding from its operation those who purchase from the producer who are "exclusively retail merchants having a fixed place of business" was not in the prior acts. This gives rise to the question of whether there is any reasonable basis for a distinction between those who are exclusively retail merchants having a fixed place of business and itinerant operators of trucks who travel through the country and purchase direct from the producer. It appears to us that there is here a sound distinction. One having a fixed place of business does not have the same opportunity of defrauding the producer by failing to pay for his product as one who has no such place of business and merely purchases a product and sells it either to small dealers or consumers. There is an element of stability and permanence in the one case that does not exist in the other. The legislative classification had for its support a reasonable and fair basis.

■ The 1933 act, as did the act of 1925, covered farm products other than grain. The act of 1923, which was sustained in the *Northern Cedar Co.* case,

covered the matter of grain as well as other farm products within the general designation of "farm product." The fact that purchasers of grain were excluded from the 1933 act does not affect its validity. In the *Northern Cedar Co.* case, it was argued that it was unfair and discriminatory to regulate the handling of some products and not others of like character, and particular attention was called to the fact that the sale of fish was not brought under the act. In this connection, it was said:

"In the first place, it may be that the legislature determined that the need for regulating the sale of food fish was not as great as that for the regulation of other food stuffs. We cannot say, as a matter of law, that the evils which the legislature found had grown up in connection with the marketing of various products covered by this statute prevail to the same extent in the sale of fish products. But should it be conceded that there is as much reason to regulate the one as the other, still the act is not unconstitutional. It is not necessary that the legislature in one act cover all foods the sale of which needs regulation. It will not do to say that an act which justly regulates certain things is unlawful because it fails to regulate other things, even of a similar nature."

The fact that grain was excluded from the operation of the act does not render it unconstitutional.

Whether those who buy agricultural products for manufacture, mentioned in the act, are within the act, we shall not here determine, but shall assume that they are. Between manufacturers and those who purchase for the purpose of resale to small dealers and consumers, there is the same basis for distinction that exists between exclusively retail merchants having a fixed place of business and purchasers for resale.

It has been our purpose in this opinion to cover and determine the questions raised which were not covered

in the cases of *State v. Bowen & Co.* and *Northern Cedar Co. v. French, supra.* What was decided in those cases we have accepted as controlling.

The case of *Sherman Clay & Co. v. Brown,* 131 Wash. 679, 231 Pac. 166, which held that an ordinance regulating dealers in second hand goods, which granted certain privileges and immunities to some such dealers and denied the same to others, could not be sustained because there was no reasonable basis for the distinction, is not applicable to any of the questions presented upon the appeal. It is true that, in the course of the opinion in that case, it referred to the classification as a class within a class, but the question is not whether it is a class within a class, but rather is there any reasonable basis for the classification.

The case of *New State Ice Co. v. Liebmann,* 285 U. S. 262, has no application to any of the questions here presented. In that case, the legislature of the state of Oklahoma had passed a law providing that no one should engage in manufacturing, selling or distributing ice in that state without first having obtained a license therefor or a permit from the commission. The act declared that the manufacture, sale and distribution of ice was a "public business." It was there held that the manufacture, sale and distribution of ice was not a public business, and therefore the act was repugnant to the due process clause of the fourteenth amendment to the Federal constitution.

There is a wide difference between an act which declares that a private business shall be a public business and one which merely regulates a private business. There is nothing in the act now before us which declares that persons dealing in the products there mentioned shall be engaged in a public business. There is nothing in the *New State Ice Co.* case to the effect that

the legislature of a state does not have the right to regulate the purchase and sale of agricultural products in the manner in which the act of this state does.

The judgment will be affirmed.

BLAKE, MITCHELL, STEINERT, and MILLARD, JJ., concur.