[No. 27889. Department Two. March 1, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Northern Pacific Railway Company, Plaintiff*, v. H. H. HENNEFORD *et al., as State Tax Commissioners, Respondents.*[1]

[1]Reported in 99 P. (2d) 616.

Robert S. Macfarlane, Dean H. Eastman, and Earl F. Requa, for relator.

The Attorney General and R. G. Sharpe, Assistant, for respondents.

JEFFERS, J.—This is an original application by the Northern Pacific Railway Company for a writ of mandate to compel the tax commission of the state of Washington, and the tax commissioners, to forthwith transmit to the relator, the county assessor and the county auditor of Thurston county, certified copies of tax commission order No. 14, which was made and entered by the commission on October 17, 1939.

The relator, as provided by chapter 16, Laws of 1939, p. 42 (Rem. Rev. Stat. (Sup.), § 11241-1 [P. C. § 6882-204a] et seq.), filed with the county assessor of Thurston county a petition, alleging that it was the owner of block 344, Olympia First Class Tidelands; that the county assessor, through manifest error, had incorrectly extended upon his tax rolls, and assessed against relator, taxes for the year 1938, upon a building of an assessed value of $375, which purportedly was located on such property; that the assessed value of the property, including land and the alleged building, for the year 1938, was $1,125; that the tax extended on this valuation, in the sum of $63.16, was paid by relator on March 22, 1939; that, in fact, there was no building on the property, and by virtue of this fact, the assessed value should be reduced to $750, and the tax reduced to $42.44. Relator prayed for a correction of the tax roll

and a refund of $21.22, together with interest thereon from March 22, 1939.

Relator further alleged that, thereafter, the county assessor investigated relator's petition, signed and certified that the facts alleged in the petition were true, and recommended that the petition be granted; that the petition was then transmitted to the county treasurer, who certified that the tax in the sum of $63.66 had been paid on March 22, 1939; that thereafter the petition was approved and signed by the prosecuting attorney of Thurston county and by him transmitted to the tax commission, with his recommendation that it be granted; that, thereafter, and on October 17, 1939, the state tax commission made and entered its order No. 14, granting relator's prayer for relief in full, ordering that the assessed value of the property be reduced to $750 and the tax to $42.44, and directing the county auditor to draw a warrant in favor of relator for the sum of $21.22, plus interest; that relator has made demand upon the tax commission to transmit certified copies of such order to the relator, the county assessor, and county auditor, but such demand has been refused, and the commission still refuses to forward such certified copies of its order.

Upon the filing of the petition, an alternative writ of mandate was issued by this court, requiring the tax commission to transmit certified copies of its order as prayed for by relator, or appear and show cause why it had not done so.

The tax commission made and filed a return to the writ, wherein it alleged that chapter 16, Laws of 1939, was unconstitutional, as being in violation of Art. I, § 12, of the state constitution, and also for the reason that it denies to persons within the state of Washington the equal protection of the laws, in violation of the fourteenth amendment of the Federal constitution.

Chapter 16, Laws of 1939, is entitled "Property Erroneously Assessed." Section 1 thereof, p. 42 (Rem. Rev. Stat. (Sup.), § 11241-1 [P. C. § 6882-204a]), provides for the filing with the county assessor of a petition by a taxpayer who believes his property has been erroneously assessed.

Section 2, p. 43 (Rem. Rev. Stat. (Sup.), § 11241-2 [P. C. § 6882-204b]), provides that the assessor shall investigate the petition, and if he finds that there is reasonable cause to believe that the property was erroneously assessed, and that such erroneous assessment was due to error in description, double assessment, or manifest error in assessment, which does not involve a revaluation of the property, or that the tax was incorrectly extended upon the tax rolls, he shall endorse his findings upon the petition and thereupon, and within ten days after filing the petition, forward the same to the county treasurer. The section further provides that it shall be the duty of the county treasurer to endorse on the petition whether or not the tax against which the complaint has been made has been paid, and, if paid, the amount thereof; whereupon, the county treasurer shall transmit the petition to the prosecuting attorney, who shall make such investigation as he deems necessary and, within ten days after receipt of the petition, transmit the same to the state tax commission, with his recommendation as to whether the petition should be granted or denied.

Section 3, p. 44 (Rem. Rev. Stat. (Sup.), § 11241-3 [P. C. § 6882-204c]), provides that, upon receipt of the petition, findings, and recommendation, the tax commission shall proceed to consider the same, and upon the conclusion of its consideration, and within thirty days after receipt of the petition, the commission shall enter an order granting or denying the petition; and if the petition be granted, the commission may order

the assessment canceled or reduced, or the extended tax corrected upon the tax rolls, in any amount it deems proper, but in no event to exceed the amount of reduction or correction recommended by the county assessor.

Section 4, p. 44 (Rem. Rev. Stat. (Sup.), § 11241-4 [P. C. § 6882-204d]), provides that certified copies of the commission's order shall be forwarded to the county assessor, the county auditor, and the taxpayer, and the taxpayer shall immediately be entitled to a refund of the difference, if any, between the tax already paid and the canceled or reduced or corrected tax, based upon the order of the tax commission, with legal interest on such amount from the date of payment of the original tax.

No contention is made that relator did not follow the procedure hereinabove outlined, or that the findings, recommendation, and order were not made by the respective county officers and by the tax commission, as set out in relator's application for the writ, but respondent has refused to transmit certified copies of its order, contending the act is unconstitutional. This contention is based upon the provisions of § 5 of the act, p. 45, which reads:

"No petition for cancellation or reduction of assessment or correction of tax-rolls and the refund of taxes based thereon under this act shall be considered if the amount of claimed erroneous or excess tax for any year involved in such petition exceeds the sum of $200 and no such petition shall be considered unless filed within three years after the challenged tax was paid." Rem. Rev. Stat. (Sup.), § 11241-5 [P. C. § 6882-204e].

Respondent contends that the act is unconstitutional, in that it attempts to place aggrieved taxpayers in two classes: (a) taxpayers paying, with or without protest, erroneous or excess taxes amounting to two hundred

dollars or less for any given year; and (b) taxpayers paying, with or without protest, erroneous or excess taxes amounting to more than two hundred dollars for any given year; that to class "a" taxpayers it grants an administrative remedy with a three-year limitation; that to class "b" taxpayers it denies any remedy whatever, either administrative or judicial, if payment was without protest, and even if payment was under protest, no remedy is awarded except by refund action brought within one year after the tax would become delinquent, if unpaid.

"In passing upon the constitutionality of a legislative enactment, several things must always be kept in mind. Courts will not sit to review or revise legislative action, but rather to enforce the legislative will when acting within its constitutional limits. A legislative act carries with it the presumption of its constitutionality, and will not be declared void unless its invalidity appears beyond a reasonable doubt. If the act is fairly and reasonably open to more than one construction, that construction will be adopted which will harmonize the statute with the constitution and avoid a conflict therewith." *State ex rel. Department of Finance etc. v. Thurston County,* 199 Wash. 398, 92 P. (2d) 234, and cases therein cited.

We think it is apparent that § 5 of the act applies alike to all persons within the designated class, namely, those whose claim for an erroneous or excess tax is two hundred dollars or less.

The question then remains whether there is any reasonable basis for distinction between persons whose claim for an erroneous or excess tax is two hundred dollars or less, and those whose claim is for an erroneous or excess tax in excess of two hundred dollars.

The rules under which such classifications can be made, without offending against constitutional provi-

sions, are well stated in *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101:

"The aim and purpose of the special privileges and immunities provision of Art. I, § 12, of the state constitution and of the equal protection clause of the fourteenth amendment of the Federal constitution is to secure equality of treatment of all persons, without undue favor on the one hand or hostile discrimination on the other.

"To comply with these constitutional provisions, legislation involving classifications must meet and satisfy two requirements: (1) The legislation must apply alike to all persons within the designated class; and (2) reasonable ground must exist for making a distinction between those who fall within the class and those who do not.

"Within the limits of these restrictive rules, the legislature has a wide measure of discretion, and its determination, when expressed in statutory enactment, cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust."

The following cases all deal with the question of classification: *Thurston County v. Tenino Stone Quarries,* 44 Wash. 351, 87 Pac. 634, 9 L. R. A. (N. S.) 306; *State v. Cannon,* 125 Wash. 515, 217 Pac. 18; *Garretson Co. v. Robinson,* 178 Wash. 601, 35 P. (2d) 504; *Vance Lumber Co. v. King County,* 184 Wash. 402, 51 P. (2d) 623; *In re Henry's Estate,* 189 Wash. 510, 66 P. (2d) 350; *Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 54 L. Ed. 883, 30 S. Ct. 578; *Keeney v. Comptroller of New York,* 222 U. S. 525, 56 L. Ed. 299, 32 S. Ct. 105.

"Courts will not look too nicely into legislative acts to determine whether a reasonable distinction exists. A discrimination is valid if not arbitrary in the legislative sense, and a classification may rest on narrow distinctions." *Garretson Co. v. Robinson, supra.*

In *Thurston County v. Tenino Stone Quarries, supra,* we upheld the validity of a poll tax on males over

twenty-one years of age and under fifty. It was contended, in the cited case, that the act extended a special privilege and immunity to all other inhabitants.

In *State v. Cannon, supra,* we upheld a statute making it unlawful for an insurance company or agent to sell or dispose of a promissory note taken in payment of premium on life, health, and accident insurance, prior to the delivery of the policy, and exempting from its terms agents of other lines of insurance, who, in the due course of their business, might accept promissory notes in payment of first premiums. In the cited case, we stated:

"To a considerable extent, life, health and accident insurance may be sought by persons of less experience and foresight in business affairs, who require greater protection from the law to prevent impositions. . . .

"Not being able to say that the legislative classification is an arbitrary one, we hold that the statute is not unconstitutional."

The legislature, in passing chapter 16, Laws of 1939, might very well have had in mind that taxpayers who make small payments might justifiably be less careful and less informed in paying their taxes upon erroneous assessments than would a taxpayer making payments in excess of two hundred dollars. It is common knowledge that many taxpayers pay only a very small amount of taxes, in many instances much less than two hundred dollars, and we think the legislature might also have had in mind that to compel such a small taxpayer to pay such an erroneous or excess tax under protest, and then bring an action to recover it back, would be to practically deprive such taxpayer, in many instances, of any redress to which he was manifestly entitled, because of the cost necessarily incident to such a proceeding. We think it might also be assumed that the legislature had in mind that, if the taxpayer

was compelled to bring suit, where it was manifestly apparent the tax had been erroneously assessed, the county would not only be compelled to refund the tax, but would, of course, also be required to pay the statutory costs.

In *Brown-Forman Co. v. Kentucky, supra,* we find this statement:

"If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law."

In *Keeney v. Comptroller. of New York, supra,* in referring to classifications that do or do not offend against the fourteenth amendment, the court stated:

"There can be no arbitrary and unreasonable discrimination. But when there is a difference it need not be great or conspicuous in order to warrant classification."

The cases are multitudinous on this question of classification, but we think the cases cited are typical ones and announce the rule universally followed by all courts, both state and Federal.

We are not able to say that the classification in the instant case is an arbitrary or capricious one, and certainly it is not, in our opinion, inequitable; and we are therefore of the opinion that chapter 16, Laws of 1939, is not unconstitutional.

Relator also contends the statute is not subject to the construction contended for by respondent, for the reason that the word "claimed," in line 4, of § 5, modifies the phrase, "erroneous or excess tax;" that, by the express provision of the act, it is the taxpayer who does the claiming when he prepares his petition for refund, and he is the sole judge of the amount of his claim; that he may fix the amount of his claim in any sum he sees· fit, even though he may believe he is entitled to a

greater sum; that there is nothing in the act which would prohibit, for instance, a taxpayer who erroneously paid the sum of three hundred dollars in any one year, from filing his petition for a refund of two hundred dollars, as permitted by the act; that there is nothing in chapter 16 which prohibits any aggrieved taxpayer, small or large, from "asking for or seeking to obtain" or claiming a refund up to two hundred dollars for any given year; that, if such a construction were placed upon the act, all taxpayers would be placed in the same class. There is much merit to this contention of relator, but we prefer to rest our decision on the ground hereinbefore stated.

Chapter 16 being a valid act, and the state tax commission having determined that relator was, under the act, entitled to a refund, the transmission of certified copies of its order to the taxpayer, the assessor and the auditor, became purely a ministerial act, and relator is entitled to a writ of mandate to compel the tax commission to transmit such copies, in accordance with the provisions of § 4 of the act. *State ex rel. Royse v. Superior Court*, 117 Wash. 3, 200 Pac. 562.

The writ will issue as prayed for.

BLAKE, C. J., BEALS, STEINERT, and GERAGHTY, JJ., concur.